738 F.2d 1462
 19 Ed. Law Rep. 26
 Joseph C. BILBREY, a minor by his parents and next friends,
Gerald W. and Virginia C. BILBREY, Anthony E. Gartner, a
minor by his parents and next friends, Gary W. and Linda M.
Gartner, on behalf of themselves and all others similarly
situated, Plaintiffs-Appellants,
v.
Garland BROWN, Ben Gano, Robert Hansen, et al., Defendants-Appellees.
 No. 81-3008.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted May 4, 1982.
Decided Aug. 2, 1984.
 
 Simon J. ffitch, St. Helens, Or., for plaintiffs-appellants.
 Michael A. Lehner, Hershiser, Mitchell & Warren, Portland, Or., for defendants-appellees.
 Appeal from the United States District Court for the District of Oregon.
 Before KILKENNY, GOODWIN and POOLE, Circuit Judges.
 POOLE, Circuit Judge:
 
 
 1
 Anthony Gartner and Joseph Bilbrey, minors, appeal from a judgment which denied them relief in their civil rights action arising from an alleged unlawful search by appellees, Joseph Taylor and Gary Robinson. Gartner and Bilbrey were fifth grade students at a public school in Columbia County, Oregon. They were searched by Taylor, the school principal, and Robinson, a teacher, looking for drugs. The parents sued on behalf of the minors.
 
 
 2
 After the evidence was completed, the district court ruled that the search violated appellants' constitutional rights, but allowed the jury to decide whether appellees had immunity from monetary damages. The jury found immunity. On appeal appellants argue that, as a matter of law, appellees were not entitled to immunity, or alternatively, that the evidence was insufficient to support the jury verdict. Appellants also contend that the court erred in denying them declaratory relief, and that it abused its discretion in refusing to grant a new trial because of prejudicial misconduct of appellees' attorney and in denying attorney's fees.
 
 FACTS
 
 3
 On the morning of September 3, 1978, a school bus driver, Roberta Cunningham, observed Bilbrey and Gartner exchanging something on the school playground.[1] Although she could not identify the contents of the exchange, Cunningham suspected drugs and reported the incident to Taylor. When classes had begun, Bilbrey, and then Gartner were removed from class and taken to the locker room by Robinson, where Taylor was waiting. Taylor informed Bilbrey that they were going to search him for drugs and Robinson then patted him down. Taylor then had Bilbrey remove all clothing except his underwear, and the appellees searched his garments. When Gartner arrived appellees patted him down and searched through his pockets but did not require him to remove his clothing. Neither search produced drugs or evidence of drug use. The parties disputed whether appellants' permission to be searched had been sought. Appellees testified that they asked permission to search; the boys stated that they were simply told they were going to be searched.
 
 
 4
 Appellants, through their parents, brought this action under 42 U.S.C. Sec. 1983 against the members of the Columbia County School Board, the Superintendent of Schools, appellees Taylor and Robinson, bus driver Cunningham, and another teacher associated with the search. Appellants sought damages and declaratory and injunctive relief for the illegal search. In addition they sought a specific declaration that the School Board guidelines, "Minimum Standards of Conduct and Discipline" (hereafter Minimum Standards), were unconstitutional on the grounds that they authorized warrantless searches of students and were unconstitutionally vague.
 
 
 5
 On cross motions for partial summary judgment the district court held that the Minimum Standards met constitutional standards.[2] 481 F.Supp. 26 (D.Ore.1979). The court concluded that while students are entitled to the protection of the Fourth Amendment, and school administrators must have at least "reasonable cause" to search, they do not need a warrant "so long as [the] school is pursuing its legitimate interest in maintaining the order, discipline, safety, supervision, and education of students." Id. at 28. The court also held that the term, "school violation," was sufficiently defined in other portions of the "Minimum Standards" to survive a vagueness challenge. Id. at 29. Appellants do not appeal this ruling.[3]
 
 
 6
 After a three-day jury trial the district court stated that (1) as a matter of law, appellants Taylor and Robinson, had had neither "reasonable cause" nor "probable cause" to believe that Bilbrey or Gartner had drugs in their possession[4] and (2) that even if the minors were held to have agreed to the searches, "under the coercive circumstances shown" the consent was invalid as a matter of law. The court then submitted to the jury whether appellees qualified for good faith immunity under Wood v. Strickland, 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975). It also submitted the damage issue to the jury, advising them that the court had already found the searches to be unconstitutional under the Fourth Amendment and had ruled that there was no valid consent. The jury's verdict held that Taylor and Robinson were entitled to immunity and not subject to monetary liability for the searches of the boys. Subsequently, the court denied appellants' motion for declaratory relief and their request for attorney's fees as "prevailing parties" under 42 U.S.C. Sec. 1988.
 
 
 7
 We reverse.
 
 DISCUSSION
 I. Good Faith Immunity
 A. Lack of Immunity as a Matter of Law
 
 8
 Appellants contend that, as a matter of law, Taylor and Robinson were not entitled to immunity. They argue that since the permissible scope of school searches had already been settled at the time the searches were conducted, appellees should have known that "the action [they] took ... would violate the constitutional rights" of appellants, Wood v. Strickland, 420 U.S. 308, 322, 95 S.Ct. 992, 1001, 43 L.Ed.2d 214 (1975), and therefore appellees were not immune even if subjectively they actually believed they could make the searches.
 
 
 9
 In Wood due process violations by school administrators were at issue. The Supreme Court outlined the requirements of the qualified immunity defense which it had previously recognized in Scheuer v. Rhodes, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). The Court said that the immunity doctrine contained both subjective and objective elements. The official must have a sincere good faith belief that he is doing the right thing.[5] But a school official is also charged with "knowledge of the basic, unquestioned constitutional rights of his charges," and therefore is immune only if he reasonably believed he had a lawful right to take the action in question. Wood, 420 U.S. at 322, 95 S.Ct. at 1001. The Court concluded:
 
 
 10
 [W]e hold that a school board member is not immune from liability for damages under Sec. 1983 if he knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of the student affected, or if he took the action with the malicious intention to cause a deprivation of constitutional rights or other injury to the student. That is not to say that school board members are "charged with predicting the future course of constitutional law." Pierson v. Ray, 386 U.S. , at 557 [87 S.Ct. 1213 at 1219, 18 L.Ed.2d 288]. A compensatory award will be appropriate only if the school board member has acted with such an impermissible motivation or with such disregard of the student's clearly established constitutional rights that his action cannot reasonably be characterized as being in good faith.
 
 
 11
 Id.
 
 
 12
 Subsequently, in Procunier v. Navarette, 434 U.S. 555, 98 S.Ct. 855, 55 L.Ed.2d 24 (1978), the Court explained that the objective element of the good faith defense is not available to state officials:
 
 
 13
 [I]f the constitutional right allegedly infringed by them was clearly established at the time of their challenged conduct, if they knew or should have known of that right, and if they knew or should have known that their conduct violated the constitutional norm.
 
 
 14
 Id. at 562, 98 S.Ct. at 860. In Procunier, prison officials who stopped outgoing prison mail were held entitled to immunity as a matter of law since the constitutional rights of prisoners to correspond with persons outside the prison had then not yet been established. Therefore, the officials "could not reasonably have been ... aware of a constitutional right that had not yet been declared." Id. at 565, 98 S.Ct. at 861; see Midwest Growers Co-op. v. Kirkemo, 533 F.2d 455 (9th Cir.1976); see also Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2739, 73 L.Ed.2d 396 (1982) (If law at the time was not clearly established an official "could not be expected to anticipate subsequent legal developments.").
 
 
 15
 In this case, although at the time of the search there were no explicit rulings of the Supreme Court or of this circuit concerning school searches, the basic Fourth Amendment rights of students had been sufficiently well-established that appellees were adequately on notice. In Tinker v. Des Moines Independent Community School District, 393 U.S. 503, 506, 89 S.Ct. 733, 736, 21 L.Ed.2d 731 (1969) and Goss v. Lopez, 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975), the Supreme Court warned that in writing and enforcing standards of conduct that school administrators "must [act] consistently with constitutional safeguards." 419 U.S. at 574, 95 S.Ct. at 736. In Camara v. Municipal Court, 387 U.S. 523, 530, 87 S.Ct. 1727, 1731, 18 L.Ed.2d 930 (1967), the Court held that the Fourth Amendment protection applies even where the results of a search will not be used in a criminal prosecution.
 
 
 16
 Before this case arose, many courts, including the Oregon Court of Appeals, had generally held that student searches are subject to Fourth Amendment standards. See e.g., Piazzola v. Watkins, 442 F.2d 284, 287 (5th Cir.1971); Bellnier v. Lund, 438 F.Supp. 47, 53 (N.D.N.Y.1977); M. v. Board of Education Ball-Chatham Unit School District, 429 F.Supp. 288, 290 (S.D.Ill.1977); Picha v. Wielgos, 410 F.Supp. 1214, 1220 (N.D.Ill.1976); State v. Walker, 19 Or.App. 420, 528 P.2d 113 (1974). Contra People v. Stewart, 63 Misc.2d 601, 313 N.Y.S.2d 253 (Crim.Ct.1970) (principal acting as private person when he conducted the search). See generally Buss, The Fourth Amendment and Searches of Students in Public Schools, 59 Iowa L.Rev. 739 (1974).
 
 
 17
 Although at the time of the search in this case, there was some uncertainty as to the degree of protection afforded students' rights, at least the requirement of "reasonable cause" for school searches was already fairly well-established.[6] Indeed, the School Board's own guidelines, based on model school regulations adopted by the State Department of Education, indicated that "probable cause" was required for a search by school officials. While these guidelines did not as a matter of constitutional compulsion bind the school district to the probable cause standard, see United States v. Caceres, 440 U.S. 741, 751, 99 S.Ct. 1465, 1471, 59 L.Ed.2d 733 (1979); Board of Curators v. Horowitz, 435 U.S. 78, 92 n. 8, 98 S.Ct. 948, 956 n. 8, 55 L.Ed.2d 124 (1978), their adoption and authority tend to indicate that appellees, school officials, were on notice and should have been aware of the protections due to their students in the constitutional sense. See Johnson v. Duffy, 588 F.2d 740, 745 (9th Cir.1978).
 
 
 18
 However, if Taylor and Robinson should have been aware of appellants' Fourth Amendment rights, it is not true that the immunity defense was unavailable to them as a matter of law. For example, in section 1983 actions involving illegal searches, a defendant may escape liability by showing that he reasonably believed that he had sufficient cause to search, an aspect of the qualified immunity defense first articulated in Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 456 F.2d 1339 (2d Cir.1972), enforcing 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). In Bivens the court distinguished between the constitutional standard of probable cause and an officer's reasonable belief in the validity of a search. Id. at 1348. Accordingly, the court held that a police officer could prove that he acted under a reasonable belief that he was doing right even though, in fact, he lacked constitutional cause to search.
 
 
 19
 Appellees could therefore qualify for immunity from damages if they reasonably, but mistakenly, believed that they had reasonable cause or probable cause to search appellants. Similarly, if the appellees reasonably believed that Bilbrey and Gartner had legally consented to the search, they would also be entitled to such immunity. And although the antecedent inquiry, whether legal rights have been settled, may often best be resolved by the trial judge, see Harlow v. Fitzgerald, 457 U.S. at 818, 102 S.Ct. at 2739, the existence of a reasonable belief that a search is lawful, viewed in light of the "settled" nature of the law, is a question for the trier of fact.
 
 
 20
 Our own court has said that "if reasonable persons might reach different conclusions about the facts, the establishment of those facts is for the jury, and the existence of probable cause is likewise for the jury, upon a proper instruction about the law." Smiddy v. Varney, 665 F.2d 261, 265 (9th Cir.1981), cert. denied, 459 U.S. 829, 103 S.Ct. 65, 74 L.Ed.2d 66 (1982) (quoting Gilker v. Baker, 576 F.2d 245, 247 (9th Cir.1978)).
 
 
 21
 B. Sufficiency of Evidence to Support the Jury Verdict
 
 
 22
 Appellants argue that even if it was proper to submit the good faith issue to the jury, the evidence presented was insufficient as a matter of law to support the jury's verdict that appellees were entitled to immunity. Accordingly, they challenge the district court's denial of their motions for judgment notwithstanding the verdict, and, alternatively, for a new trial.
 
 
 23
 Judgment notwithstanding the verdict may be granted only if "the evidence when viewed most favorably to the party against whom the motion is directed cannot support a verdict in that party's favor." Naton v. Bank of California, 649 F.2d 691, 697 (9th Cir.1981) (quoting Traver v. Meshriy, 627 F.2d 934, 939-40 (9th Cir.1980)). The precise question therefore is whether so viewed the evidence supports the finding that Taylor and Robinson reasonably believed that they had sufficient cause to search or that appellants consented to the search.
 
 
 24
 On this issue, appellant Bilbrey particularly argues that even if the appellees reasonably could have believed themselves justified in making a "pat-down" search, neither they nor any reasonable jury could have reasonably believed that the strip search to which he was subjected was justified. He cites cases to the effect that a defendant's good faith immunity shield becomes more difficult to maintain as the intrusiveness of the unconstitutional search increases. Therefore, we must "balanc[e] the need to search against the invasion which the search entails." Camara, 387 U.S. at 537, 87 S.Ct. at 1735; see Doe v. Renfrow, 631 F.2d 91 (7th Cir.1980), cert. denied, 451 U.S. 1022, 101 S.Ct. 3015, 69 L.Ed.2d 395 (1981) (Brennan, J., dissenting); M.M. v. Anker, 477 F.Supp. 837 (E.D.N.Y.), aff'd, 607 F.2d 588 (2d Cir.1979).
 
 
 25
 Viewed in a light most favorable to the appellees, the evidence purportedly supporting the immunity verdict is as follows. The bus driver, Cunningham, testified that she saw Gartner and Bilbrey exchange "what appeared to be money" for an object she could not identify. Several days earlier Bilbrey had boarded her bus carrying a paper sack which he hid under his jacket. Upon leaving the bus, she stated, he showed the contents to Gartner, and they went to the side of the gym outside her view. Cunningham indicated that she had reported this earlier incident to Taylor's office because she suspected that drugs might be involved. There was no other evidence, other than her suspicion, that the unidentified object, or the undisclosed contents of the sack, contained contraband.
 
 
 26
 Another bus driver, Jean Bennet, testified to an occasion when several students on her bus, including Chad Gartner, Anthony Gartner's older brother, but not Anthony, offered her marijuana. It is not clear whether she reported this incident to Taylor or Robinson or how the testimony related to Anthony.[7] Finally, Taylor testified that there existed a general problem with drugs in Columbia County High School and that he feared drug use would spread to the elementary school.
 
 
 27
 As to consent, Taylor testified, and Robinson confirmed, that he first asked Bilbrey if he had brought any drugs to school. When Bilbrey said no, Taylor asked if he could search him to substantiate that. According to Taylor, Bilbrey responded "Yes. Go ahead. I have nothing to hide." Although Taylor's testimony mentions no request to search Gartner, Robinson testified that Taylor asked the boy if they could search him and that he repeated that it was all right.[8]
 
 
 28
 Unfortunately the district court did not advise the jury how to apply these principles to the facts to be found. It simply instructed that the defendants would be entitled to immunity if they "had reasonable grounds for the belief that their action was constitutional." But this does not adequately focus the evidence in the direction along which the jury would have to proceed in order to come to that broad conclusion. In this thorny field, a lay jury could hardly be expected to make the distinction between constitutional concepts of probable cause, and the practical, pragmatic rules which protect the public official who on an articulable basis brings his conduct within the law.
 
 
 29
 Without some particularized instructions, the jury was left to generalize without being told what to look for as the components of the beliefs the good faith of which they were to decide. This was especially critical since the court held as a matter of law that the officials had neither "reasonable cause" nor "probable cause" for believing that either boy possessed drugs, and also, held also as a matter of law, that there had been no valid consent. Although those rulings did not preclude the application of good faith immunity, they made it all the more important that the jury be given meaningful instructions on this factual dispute as to reasonable beliefs.
 
 
 30
 In addition to lacking precise instructions, the record shows that the defendants presented little to justify Gartner's search and nothing to justify the strip search of Bilbrey. Such intrusive handling of the minors required justification. The burden of establishing that affirmative defense lay on the appellees. Appellee Taylor, the school principal, said only that he did not believe he was engaging in a violation of the minors' rights. Robinson, who had been appellants' teacher for seven months, testified that he had had no previous reason to suspect them of possessing drugs. Each appellee proclaimed lack of intent to do wrong, but did not show why he could reasonably have believed that what he did was right. It is settled that the defense of "good faith" is not established merely by an unsupported claim to that state of mind:The official himself must be acting sincerely and with a belief that he is doing right, but an act violating a student's constitutional rights can be no more justified by ignorance or disregard of settled, indisputable law on the part of one entrusted with supervision of students' daily lives than by the presence of actual malice. To be entitled to a special exemption from the categorical remedial language of Sec. 1983 in a case in which his action violated a student's constitutional rights, a [school official] * * * must be held to a standard of conduct based not only on permissible intentions, but also on knowledge of the basic, unquestioned constitutional rights of his charges.
 
 
 31
 Wood v. Strickland, 420 U.S. at 321-22, 95 S.Ct. at 1000-01.
 
 
 32
 Thus, neither Taylor nor Robinson satisfied their burden to show affirmatively that their conduct "was justified by an objectively reasonable belief that it was lawful." Gomez v. Toledo, 446 U.S. 635, 640, 100 S.Ct. 1920, 1924, 64 L.Ed.2d 572 (1980). The Supreme Court has stated:
 
 
 33
 It is the existence of reasonable grounds for the belief formed at the time and in light of all the circumstances, coupled with good-faith belief, that affords a basis for qualified immunity of executive officers for acts performed in the course of official conduct.
 
 
 34
 Scheuer v. Rhodes, 416 U.S. at 247-248, 94 S.Ct. at 1692. (Emphasis supplied).
 
 
 35
 As pointed out above, the state of the law as of the time these incidents occurred was reasonably settled to the extent that school officials could be expected to have knowledge of their pupils' rights in matters as fundamental as detention and search. The school's own regulations imposed standards which closely tracked the developed state of the law. Appellees do not defend on the grounds that the constitutional rules were in an unsettled state or unclear and hence ought not be held against them.
 
 
 36
 Under these circumstances, we conclude that the verdicts finding qualified good faith immunity of the appellees were not supported by the evidence, must be set aside, and that appellants' motions for judgment notwithstanding the verdicts should have been granted on the liability issue. Appellants are entitled to judgment that appellees' conduct did not qualify for immunity. However, because the amount of damages, if any, for the violations must be determined by the trier of fact, we will remand for a new trial on the issue of damages.
 
 
 37
 II. The Motion for a New Trial Based on Attorney Misconduct
 
 
 38
 Appellants argue that the district court abused its discretion in denying their motion for a new trial based on appellees' counsel's misconduct during the course of the trial. At the post-trial hearing on the motion, the court acknowledged that counsel had "attempt[ed] to tar the boys with the alleged sins of a brother and father" and that his efforts had been "eminently unfair." However, the court concluded that it would be unfair to "punish the defendants with ... the overzealousness of their attorney."
 
 
 39
 Since we order a partial new trial, little purpose would be served by memorializing the conduct of counsel of which appellants complained. We have reviewed the record and are disturbed that such gross and unprofessional breaches of an attorney's obligation of fairness could occur. It most surely was a disservice to counsel's own clients as well as manifest prejudice to the adversary parties. We note that the district judge did immediately pronounce it "totally irresponsible conduct," on one occasion admonished the jury to disregard a particularly obnoxious question, and further to "assume that it was made in bad faith." The experienced trial judge ruled out much of the indecorous examination and statements, and while he denied a mistrial motion and, later, a motion for new trial on this basis, we are assured that such antic courtroom behavior and display of poor advocacy is unlikely to be repeated, and if so, will receive appropriate discipline.III. Declaratory Relief
 
 
 40
 Appellants appeal the district court's denial of their post-trial motion for declaratory relief that the searches of Bilbrey and Gartner were unconstitutional.[9] At the hearing on the motion the court concluded that such relief "would serve no useful purpose and would involve the court in a continuing policing function unnecessarily." It explained that the appellees had only escaped liability because the jury thought that they were not aware that the searches were unconstitutional, and since they now were aware of the law as it applied to them, declaratory relief would be unnecessary. This was error.
 
 
 41
 Granting declaratory relief is committed to the sound discretion of the trial court. Doe v. Gallinot, 657 F.2d 1017, 1024 (9th Cir.1981). However, "[w]hether that discretion should be exercised in a given instance is subject to more searching review by an appellate court than the 'abuse of discretion' standard." Id. at 1025.
 
 
 42
 The courts have generally recognized two criteria for determining whether declaratory relief is appropriate; "(1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." McGraw-Edison Co. v. Preformed Line Products Co., 362 F.2d 339, 342 (9th Cir.), cert. denied, 385 U.S. 919, 87 S.Ct. 229, 17 L.Ed.2d 143 (1966) (quoting Borchard, Declaratory Judgments 299 (2d ed. 1941)).
 
 
 43
 Aside from immunity, the main issue at trial was the legality of the searches. On motions for a directed verdict, the court ruled that the searches were unconstitutional and so instructed the jury. However, the court never made a formal ruling to that effect. The court explained its ruling as follows:
 
 
 44
 I can grant declaratory relief even though the defendants acted in good faith and were exonerated from paying damages and even though I already declared the searches to have been unconstitutional. I decline to do so, however, because it would serve no useful purpose and it would involve the Court in a continuing policing function unnecessarily. In this case the defendants avoided payment of money damages only because the jury found that the defendants acted in good faith and were not aware that the search was unconstitutional. They know it now. And it's inconceivable that a defense of good faith would even get to the jury if there were another incident of this kind. It would do no good for me to write of the constitutional standards to apply to these particular defendants. They now know the law as it applied to them.
 
 
 45
 The court apparently was influenced by the jury's verdict which found immunity and denied damages. The assumption was that since appellees had been found to have acted in good faith and probably had learned painful lessons during the trial, there was no need for a declaratory relief. But this looks entirely upon the appellees' point of view and not at the propriety of the relief to which the appellants were entitled. See Piphus v. Carey, 545 F.2d 30, 32 (7th Cir.1976), rev'd on other grounds, 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978) (declaratory relief appropriate for violations of students' due process rights even where suspensions expunged from school records). See also Carey v. Piphus, 435 U.S. 247, 266-267, 98 S.Ct. 1042, 1053-1054, 55 L.Ed.2d 252 (1978) (denial of due process should be actionable for nominal damages even without proof of actual injury).
 
 
 46
 Moreover, a court declaration is a message not only to the parties but also to the public and has significant educational and lasting importance. It would be another marker along the road to implementation of Fourth Amendment rights. As appellants point out, courts that have held school searches unconstitutional have generally found it appropriate to enter declaratory relief even where defendants may also have been separately held entitled to immunity from damages. See Bellnier v. Lund, 438 F.Supp. at 55. See generally Pope v. Chew, 521 F.2d 400, 406 (4th Cir.1975).
 
 
 47
 Finally, it appears that the controversy here "is of sufficient immediacy and reality to warrant the issuance" of declaratory relief. Super Tire Engineering Co. v. McCorckle, 416 U.S. 115, 122, 94 S.Ct. 1694, 1698, 40 L.Ed.2d 1 (1974) (quoting Maryland Casualty Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941)). Even though Gartner and Bilbrey have both gone on to high school and appellee Taylor is no longer principal of the school, a declaration will serve to delineate important rights and responsibilities. Moreover, appellants brought this case as a class action and shortly after the litigation began, the court certified a class including future persons attending Columbia County Elementary Schools. Therefore there are persons before the court, other than appellants, who stand to benefit from such an order. Taylor was sued in both his individual and official capacity and therefore his successor is before the court. See Fed.R.Civ.P. 25.
 
 
 48
 Under the circumstances, we hold that appellants were entitled to appropriate declaratory relief regarding the unconstitutional searches.
 
 
 49
 IV. Due Process Claims Based on School Regulations
 
 
 50
 Appellants' claim that their due process rights were violated because Taylor and Robinson's conduct did not comply with the "probable cause" standard in the School Board Regulations cannot be sustained.
 
 
 51
 The school guidelines require "probable cause" for search, but it is doubtful that a violation of the School Board's "minimum standards" translates into a due process violation of these facts. Violations of a regulation that do not relate to the decision making process of the agency or entity do not automatically implicate due process.[10]
 
 
 52
 In any event, we conclude that the district court was correct in dismissing the due process claim prior to submitting the case to the jury. In Board of Curators v. Horowitz, 435 U.S. at 92 n. 8, 98 S.Ct. at 956 n. 8, the Supreme Court indicated that a state agency's violations of its own internal rules not otherwise constitutionally required would not give rise to a due process violation. The Court specifically distinguished the cases appellants rely on, including Accardi v. Shaughnessy, 347 U.S. 260, 74 S.Ct. 499, 98 L.Ed. 681 (1954), as "applying principles of federal administrative law rather than of constitutional law binding upon the States." See Pennhurst State School & Hospital v. Halderman, --- U.S. ----, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984).
 
 
 53
 Thus the district court correctly concluded that appellants' due process claim arising out of the school's regulations would not make a search unconstitutional if it were otherwise valid under the Fourth Amendment.
 
 V. Attorney's Fees
 
 54
 Finally, appellants challenge the district court's denial of their post-trial motion for attorney's fees under 42 U.S.C. Sec. 1988. The court concluded that appellants were not "prevailing parties" under the terms of the statute since the jury found that appellees were entitled to immunity from damages. We have determined that that verdict is unsupported by the evidence and that appellees have prevailed on the immunity issue. Therefore, appellants will be entitled to an award of attorney's fees whether they are eventually awarded substantial or nominal damages. Carey v. Piphus, 435 U.S. at 266-67 & n. 24, 98 S.Ct. at 1053-54 & n. 24 (constitutional rights violations justify nominal damages without proof of actual injury).
 
 CONCLUSION
 
 55
 The judgment of the district court is reversed and the case is remanded with directions to set aside the jury verdict as to immunity of appellees, to enter judgment notwithstanding the verdict for appellants on the issues of immunity; to award appropriate declaratory relief and for a new trial as to damages; and reasonable attorney's fees. Appellants are entitled to their costs of appeal.
 
 
 56
 REVERSED in part, AFFIRMED in part, and REMANDED with directions.
 
 KILKENNY, Circuit Judge, dissenting:
 
 57
 I dissent. Although the majority holds as a matter of law the school officials were not entitled to immunity, I would reverse on the ground that the district court erred in holding that settled law existed on the issue of applying the Fourth Amendment to school searches and in subsequently submitting the good faith immunity question to the jury.
 
 
 58
 A school official's immunity is based on actual or reasonable knowledge that the official's actions would violate the constitutional rights of the student affected, Wood v. Strickland, 420 U.S. 308, 322, 95 S.Ct. 992, 1000, 43 L.Ed.2d 214 (1975), and such officials are held to a standard of conduct that includes knowledge of the basic, unquestioned constitutional rights of their charges. Id. Those constitutional rights must be clearly established at the time of the challenged action. See id.; Procunier v. Navarette, 434 U.S. 555, 98 S.Ct. 855, 55 L.Ed.2d 24 (1978) (scope of constitutional rights of prisoners regarding correspondence with persons outside of prison not yet established at time of acts).
 
 
 59
 The conduct challenged in this case occurred in September, 1978. Neither the Supreme Court of the United States nor the Ninth Circuit had addressed the issue of school searches within the Fourth Amendment. Even cases cited by the majority state that this area of law was far from clear at the time. See Bellnier v. Lund, 438 F.Supp. 47, 52 (N.D.N.Y.1977); M. v. Bd. of Ed. Ball-Chatham Comm. Unit School Dist., 429 F.Supp. 288, 292 (S.D.Ill.1977).
 
 
 60
 The majority's reliance on Tinker v. Des Moines Ind. Comm. School Dist., 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969) and Goss v. Lopez, 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975), does not dictate a contrary result. While both cases stand for the proposition that students retain constitutional rights, Tinker involved the right to free speech and Goss procedural due process. Reliance on Picha v. Wielgos, 410 F.Supp. 1214 (N.D.Ill.1976), is equally misplaced, because the court there hinged its holding upon police involvement in the searches. See 410 F.Supp. at 1220; Bellnier, 438 F.Supp. at 52. The same holds true for Piazzola v. Watkins, 442 F.2d 284, 286 (CA5 1971). In the final case relied upon, State v. Walker, 19 Or.App. 420, 528 P.2d 113 (1974), the court held that the general exception to the exclusionary rule for the fruits of a search made by private citizens was inapplicable to a school principal, however the record there was inadequate for application of Fourth Amendment principles.
 
 
 61
 Fourth Amendment inquiry focuses on reasonableness, Terry v. Ohio, 392 U.S. 1, 9, 88 S.Ct. 1868, 1873, 20 L.Ed.2d 889 (1968), and in this regard the student's right to be free from searches is balanced against the school's broad supervisory and disciplinary powers. Horton v. Goose Creek Ind. School Dist., 690 F.2d 470, 480-81 (CA5 1982), cert. denied --- U.S. ----, 103 S.Ct. 3536, 77 L.Ed.2d 1387 (1983); see Goss, 419 U.S. at 574, 95 S.Ct. at 736. School teachers and administrators assume society's duty of providing a safe and orderly environment in which education is possible, given that students too young to be considered capable of mature restraint in the use of illegal or dangerous substances are grouped together in close contact during a substantial part of the school day for three fourths of each year. See Horton, 690 F.2d at 480; Ferrell v. Dallas Ind. School Dist., 392 F.2d 697, 704 (CA5 1968) (Godbold, J., specially concurring).
 
 
 62
 Although the doctrine of in loco parentis, whereby parents are viewed as having ceded over their parental powers to protect the best interests of the child, has met with disfavor, see Horton, 690 F.2d at 480-81 & n. 18, nevertheless school officials have a duty and a responsibility to maintain order and discipline. In Oregon, by statute, special emphasis must be given to instructing public school students on the effects of alcohol, tobacco, drugs and controlled substances upon the human system. Or.Rev.Stat. Sec. 336.067 (1983) (formerly Sec. 336.240; 1975 c. 531, Sec. 1). The State Board of Education is required to establish standards for student conduct and discipline, Or.Rev.Stat. Sec. 339.240 (1983), and students are required to comply with these rules, Or.Rev.Stat. Sec. 339.250 (1983).
 
 
 63
 Drug possession constitutes a significant danger both to the possessor and to those who may obtain drugs from that person. Cf. Bellnier, 438 F.Supp. at 54. There was evidence in this case that several students on a school bus, including the older brother of appellee Gardner, offered marijuana to the bus driver, and that the school principal was concerned about the recognized drug problem that existed at the local high school spreading to the elementary school. Also, the bus driver observed appellee Bilbrey hiding a paper sack and later exchanging its contents for money with appellee Brown.
 
 
 64
 For these reasons, absent controlling case authority at the time the conduct in question occurred, it cannot as a matter of law be concluded that 'settled, undisputed' constitutional law existed as to application of the Fourth Amendment to public school searches. Even at this late date, it cannot be said with certainty in this circuit or in the Supreme Court that constitutional law is settled and undisputed on this issue. See New Jersey v. T.L.O., 94 N.J. 331, 463 A.2d 934 (1983), cert. granted --- U.S. ----, 104 S.Ct. 480, 78 L.Ed.2d 678 (1983), argued 52 U.S.L.W. 3730 (Mar. 28, 1984) (issue presented: does Fourth Amendment's exclusionary rule apply to searches made by public school officials and teachers in school?), restored to calendar for reargument 44 (CCH) S.Ct.Bull. B5178 (July 5, 1984) (further issue: did assistant principal violate the Fourth Amendment in opening respondent's purse?).
 
 
 
 [1]
 At trial the boys claimed that they were trading bubble gum, which was not permitted on school property
 
 
 [2]
 The summary judgment motion was decided by a different judge than the one who presided over the trial
 
 
 [3]
 At the pre-trial conference, the court granted appellants' motion to voluntarily dismiss the School Board members as defendants in their individual capacities
 
 
 [4]
 At the same time the court granted defendants Cunningham and Birk's motion for a directed verdict. Appellants do not appeal that ruling. (C.R. 91)
 
 
 [5]
 In Harlow v. Fitzgerald, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982) the Supreme Court reexamined the Woods test and eliminated the "subjective" element of the good faith immunity doctrine. The Court observed that inquiry into an official's subjective motivation often requires extensive discovery of a particularly intrusive nature and creates a risk of excessive interference with official duties. In addition, the Court noted, the subjective test enabled otherwise meritless claims to survive a motion for summary judgment because of the court's reluctance to grant summary judgment on the issue of motivation, which is generally considered a factual question appropriate for the jury. Id. at 818, 102 S.Ct. at 2738. The court therefore reformulated the immunity test using only the "objective" standard:
 We therefore hold that government officials ... are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.
 Id.
 
 
 [6]
 Although the appellees raise the uncertainty of the law question on appeal, they did not raise this issue before the trial court. We have indicated that the defendant bears the burden of establishing good faith immunity. Harris v. City of Roseburg, 664 F.2d 1121, 1129 (9th Cir.1981). Appellees did not present an argument either to the judge or the jury that the legal standards were unsettled at the time so that they were not aware of appellants' constitutional rights. Therefore it appears appellees have waived the issue by not raising it in the district court. Friedman & Jobusch, Architects & Engineers v. Commissioner, 627 F.2d 175, 177 (9th Cir.1980)
 
 
 [7]
 Counsel for appellees attempted on several occasions, during opening remarks and in witness examination, to inject inferences that other members of the Gartner family and other students, not including appellants, were suspected of some dealings in marijuana, from which he desired the jury to conclude that the school authorities were reasonable in believing that the two boys might have had such possession. The district court sustained objections, and admonished counsel (see Part II, infra ), calling it improper and "irresponsible."
 
 
 [8]
 Although appellants testified that they were not asked whether they would consent to a search, for purposes of assessing a motion for judgment notwithstanding the verdict, the court must accept the jury's credibility findings consistent with the verdict. C. Wright and A. Miller, Federal Practice and Procedure, Sec. 2527 (1971). There remains a serious question of validity of the claimed uncounseled waiver by these children of their rights against a search without probable cause
 
 
 [9]
 The court also denied appellants' request for injunctive relief contained in the same motion. Appellants do not appeal that ruling. Their request for declaratory relief is not affected by that action since "different considerations enter into a federal court's decision as to declaratory relief, on the one hand, and injunctive relief, on the other." Roe v. Wade, 410 U.S. 113, 166, 93 S.Ct. 705, 733, 35 L.Ed.2d 147 (1973)
 
 
 [10]
 United States v. Caceres, 440 U.S. 741, 751, 99 S.Ct. 1465, 1471, 59 L.Ed.2d 733 (1979); Board of Curators v. Horowitz, 435 U.S. 78, 92 n. 8, 98 S.Ct. 948, 956 n. 8, 55 L.Ed.2d 124 (1978). United States v. Lockyer, 448 F.2d 417, 421 (10th Cir.1971); Violations by Agencies of Their Own Regulations, 87 Harv.L.Rev. 629, 654-55 (1974). Contra Hupart v. Board of Higher Education, 420 F.Supp. 1087, 1107 (S.D.N.Y.1976)