**ICR GRADUATE SCHOOL, et al., Plaintiffs,**

v.

**Louis HONIG, et al., Defendants.**

**Civ. No. 90–0483–B(IEG).**

United States District Court, S.D. California.

March 7, 1991.

Wendell R. Bird, Atlanta, Ga., Loren E. McMaster, Sacramento, Cal., for plaintiffs.

Gregory J. Roussere, Deputy Gen. Counsel, California Dept. of Educ., Sacramento, Cal., for defendants.

MEMORANDUM OPINION AND ORDER GRANTING MOTION TO LIFT STAY; GRANTING IN PART AND DENYING IN PART MOTION TO AMEND; GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

BREWSTER, District Judge.

The above captioned matter came on for hearing on February 19, 1991, before the Honorable Rudi M. Brewster. Upon consideration of plaintiffs' Motion to Lift Stay of Proceedings, plaintiffs' Motion to Amend, and defendants' Motion to Dismiss, and the oral argument thereon, the court hereby enters the following memorandum opinion and order.

### FACTS

The ICR Graduate School (the School) offers graduate degree programs in science, with an emphasis on creationist and Christian interpretation. In 1988, the Private Postsecondary Education Division of the State Department of Education (PPED) sent a Visting Committee to the School in order to review and verify the School's compliance with Department requisites and guidelines for private postsecondary institutions. In late 1988, the Visiting Committee voted by a three to two margin to recommend against approval of the School's degree programs. In 1989, a second Visiting Committee voted by a four to one margin against recommending approval.

On March 16, 1990, the PPED sent the School its "Final Notice of Denial of Authorization to Operate Under Education Code Section 94310.2." This notice advised the School that it would be denied approval as a degree granting institution, pending an administrative appeal. The procedures for such an appeal were outlined in the notice of denial.[1]

Instead of pursuing an administrative appeal, on April 13, 1990 the School filed the instant complaint, alleging causes of action based upon (1) academic freedom and free speech; (2) freedom of religion; (3) due process; (4) equal protection; and (5) pendent state claims. Alleging irregularities in the Department's review procedures, the School sought declaratory and injunctive relief pursuant to § 1983, or money damages. The School named as defendants Louis Honig, Superintendent of Public Instruction, in his official and individual capacities; Joseph Barankin, Assistant Superintendent of Public Instruction, in his official and individual capacities; Jeanne Bird, Acting Director of the PPED, in her official capacity; and the Department of Education. On May 15, 1990, the School amended its complaint to add as plaintiffs Dr. Kenneth B. Cumming, S. Harris Rugg, and Woodside Christian Elementary School.

While the complaint was pending, the School initiated an administrative appeal. On August 13, 1990, this court heard defendants' motion to dismiss the first amended complaint on the ground that plaintiffs' claims were not ripe for adjudication be-

---

1. There is some dispute among the parties as to whether the notice of denial was "final" or merely "proposed." Although the March 16, 1990 letter was entitled "Final Notice," it is undisputed that an administrative appeal remained available to the School after receipt of that document. Moreover, after receiving the notice the School continued to offer graduate degrees in science without interruption. Accordingly, this court views the so-called "Final Notice" as an intermediate step in the administrative review process.

cause the School had failed to exhaust the administrative process. At the same time, plaintiffs moved to enjoin the administrative proceedings because said proceedings had commenced after the complaint was filed. By order entered October 19, 1990, this court removed defendants' motion from the court's calendar, denied plaintiffs' motion, and on its own motion, stayed the judicial proceedings pending the conclusion of the administrative process.

Subsequent to this ruling, the School filed a second lawsuit against Honig, the Department, and the Council for Private Postsecondary Educational Institutions, this time in Sacramento Superior Court. In that complaint, the School sought a mandatory injunction ordering defendants to withdraw the notice of denial, and to enjoin defendants from going forward with the administrative process.

On November 7, 1990, the PPED sent the School its "Withdrawal of Proposed Final Notice of Authorization to Operate Under Education Code Section 94310.2." In that document, the PPED states:

> The Private Postsecondary Education Division (PPED) of the California Department of Education is basing this withdrawal on the advice of counsel. The Attorney General who represents PPED in this action has advised us that they are exercising their authority, as legal representative ..., and are electing not to prosecute the administrative appeal filed by your institution.
>
> *This action will place your institution in the status that it was prior to the reviews by the 1988 and 1989 Visiting Committees.*

(emphasis added). A short time after this notice was sent, the state lawsuit was resolved by a stipulated judgment, dated November 30, 1990, which included the PPED's agreement not to initiate, com-

mence, or continue any administrative action against the School.

On January 1, 1991, the California Council for Private Postsecondary and Vocational Education (New Council) was granted authority to accredit private postsecondary institutions, replacing the PPED.[2] The New Council is operating under a new statutory scheme,[3] and is obligated to adopt their own set of statutory standards. Cal. Educ.Code § 94305, 94337.

## DISCUSSION

### I. *Plaintiffs' Motion to Lift Stay of Proceedings*

■ This motion is unopposed, and must be granted because the Department has terminated the pending administrative appeal pursuant to the stipulated judgment in the state court litigation.

### II. *Plaintiffs' Motion to Amend*

Plaintiffs seek leave to amend to add a description of the superior court litigation, and also seek leave to add new defendants. Fed.R.Civ.Proc. 15(a) provides that leave to amend "shall be freely given when justice so requires."

#### A. *Description of Recent Proceedings*

■ The filing of the state court complaint and the result of that action are clearly relevant to this case. Accordingly, plaintiffs may amend their complaint to contain a description of those proceedings.

#### B. *New Defendants*

■ Plaintiffs seek leave to add the New Council and chair Roseanne Martinez as defendants on the ground that the alleged constitutional deprivations visited upon the School by the Department may recur under the New Council. According to plaintiffs, the following facts support this allegation and the concomitant amendment: (1) new

---

**2.** The stipulated judgment, including the agreement not to initiate, commence, or continue any administrative action against the School, bound only the PPED, and not the New Council.

**3.** The School had operated under the authority of Cal.Educ.Code § 94310.2. Under the new

law there is no such provision, as all degree granting schools are combined under Cal.Educ. Code § 94310. This new section imposes substantially different requirements for approval than did § 94310.2.

chair Martinez was also a member of the Department; (2) Superintendent Honig, a defendant throughout, is a member of the New Council; (3) many other New Council personnel are former Department employees; (4) the biased records of the Department will be transferred or made available to the New Council; (5) the same statutory standards wrongfully applied by the Department remain to be applied by the New Council; and (6) Jeanne Bird, former director of the PPED, and a defendant throughout, is likely to become a member of the new council.

Plaintiffs offer nothing more than a conclusory link between the New Council and the allegations of past harm. The New Council, while it is the successor to the PPED, is operating under a new statutory scheme and is required to adopt its own standards. At most, the proposed amendment would lend a speculative cause of action to the complaint.

█ While the court recognizes that the New Council may in the future revoke the School's degree-granting authority, the same may be said as to any private postsecondary institution in the state. Until an improper revocation actually occurs, no cause of action can exist against the New Council or Martinez. Leave to amend should not be granted where the amendment fails to allege facts which would support a theory of liability. *See Klamath–Lake Pharmaceutical Association v. Klamath Medical Service Bureau,* 701 F.2d 1276, 1293 (9th Cir.), *cert. denied,* 464 U.S. 822, 104 S.Ct. 88, 78 L.Ed.2d 96 (1983). Accordingly, leave to amend should not be granted as to the addition of the New Council and Martinez as defendants.[4]

**4.** However, the court finds no merit in defendants' alternative contention that plaintiffs sought leave to amend in order to forestall a ruling on the merits of defendants' motion to dismiss.

**5.** Defendants have also asserted that plaintiffs' claim is not ripe, because plaintiffs had not exhausted their administrative remedies at the time the suit was commenced. Where no administrative proceedings are pending, plaintiffs

## III. *Defendants' Motion to Dismiss*

Defendants attack the complaint primarily on four grounds: (A) with respect to plaintiffs' prayer for injunctive or declaratory relief, defendants argue that the complaint is moot because plaintiffs have obtained complete relief and the statutory creation of the New Council ensures that the defendants in this case will not harm the School in the future; (B) the Department and state officials sued in their official capacity are immune from suit in federal court; (C) state officials sued in their individual capacity under § 1983 are immune from a suit for money damages under the qualified immunity doctrine; and (D) certain plaintiffs lack standing.

Taken in combination, the first three arguments would leave plaintiffs without any viable cause of action, and the fourth represents an alternative ground for partial dismissal.[5]

### A. *Mootness of Injunctive and Declaratory Relief*

As this Circuit has held, "a moot action is one where 'the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome.'" *Northwest Environmental Defense Center v. Gordon,* 849 F.2d 1241, 1244 (9th Cir.1988) (quoting *Murphy v. Hunt,* 455 U.S. 478, 481, 102 S.Ct. 1181, 1183, 71 L.Ed.2d 353 (1982) (per curiam)). Stated another way, "[a] claim is moot if it has lost its character as a present, live controversy." *United States v. Geophysical Corp. of Alaska,* 732 F.2d 693, 698 (9th Cir.1984). A court cannot take jurisdiction over a claim to which no effective relief can be granted. *Id.* at 698.

█ Where the activities the plaintiff seeks to enjoin have already occurred, and

do not have an affirmative duty to exhaust administrative remedies prior to bringing a claim under § 1983. *Patsy v. Board of Regents,* 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982). Because the administrative proceedings in this case have been terminated by agreement of the parties, *Patsy* is now applicable. Accordingly, defendants' argument on this issue is unpersuasive.

the court cannot undo what has already been done, the action is moot and no injunction can be granted. *Friends of the Earth, Inc. v. Bergland,* 576 F.2d 1377, 1379 (9th Cir.1978). In this case, the requested injunction was intended to prevent allegedly unconstitutional activity, i.e., the Department's denial of the School's approval to grant degrees. Today, the School is approved and, as stated in the withdrawal notice issued on November 7, 1990, the School has been returned to its prior status.[6] Moreover, the New Council has replaced the PPED in reviewing and approving private postsecondary institutions, and has not taken any action against the School. Therefore, there is no conceivable injunctive relief which this court can grant.

Where declaratory relief is also requested, courts have a duty to decide "the appropriateness and the merits of the declaratory request irrespective of ... the propriety of the issuance of the injunction." *Zwickler v. Koota,* 389 U.S. 241, 254, 88 S.Ct. 391, 399, 19 L.Ed.2d 444 (1967). As this Circuit has stated, "The question is not whether the precise relief sought at the time the application for an injunction is still available. The question is whether there can be any effective relief." *Garcia v. Lawn,* 805 F.2d 1400, 1403 (9th Cir.1986).

Declaratory relief is justified when "the challenged government activity ... is not contingent, has not evaporated or disappeared, and, by its continuing and brooding presence, casts what may well be a substantial adverse effect on the interests of the petitioning parties." *Super Tire Engineering Co. v. McCorkle,* 416 U.S. 115, 122, 94 S.Ct. 1694, 1698, 40 L.Ed.2d 1 (1974). The adverse effect must not be "so remote and speculative that there [is] no tangible prejudice to the existing interests of the parties." *Id.* at 123, 94 S.Ct. at 1698.

Generally, courts will consider declaratory relief only "(1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *McGraw–Edison Co. v. Preformed Line Products Co.,* 362 F.2d 339, 342 (9th Cir.), *cert. denied* 385 U.S. 919, 87 S.Ct. 229, 17 L.Ed.2d 143 (1966) (quoting Borchard, *Declaratory Judgments* 299 (2d ed. 1941)).

■ However, in determining whether declaratory relief is appropriate, the court must also be mindful of plaintiffs' desire for vindication and the significant public and educational interests served by declaratory relief judgments. *Bilbrey by Bilbrey v. Brown,* 738 F.2d 1462, 1471 (9th Cir.1984). In *Bilbrey,* plaintiffs were fifth grade students suing to recover for allegedly unlawful searches by school officials. *Id.* at 1463. Plaintiffs sought both damages and a declaration that the searches violated their fourth amendment rights. *Id.* at 1464. After finding that the defendants had acted in good faith, the jury denied monetary relief under the doctrine of qualified immunity. *Id.* The district court then denied declaratory relief, because the judge believed that "[i]t would do no good for me to write of the constitutional standards to apply to these particular defendants." *Id.* at 1470.

■ Relying primarily on the public and educational interest in declaratory judgments, as well as plaintiffs' interest in vindication, the Ninth Circuit reversed. *Id.* at 1470–71. The court noted that a declaratory judgment "would be another marker along the road to implementation of Fourth Amendment rights." *Id.* at 1471. *See also Piphus v. Carey,* 545 F.2d 30, 32 (7th Cir. 1976), *rev'd on other grounds,* 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978) (declaratory relief appropriate for violations of students' due process rights even where suspensions expunged from school records).[7]

---

6. While the School never actually lost its degree-granting authority, it has been returned to its prior status in the sense that it no longer is operating while subject to a denial pending administrative appeal.

7. In support of their "vindication" argument, plaintiffs also cite *Powell v. McCormack,* 395 U.S. 486, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969). *Powell* is not persuasive authority when applied to this case. In *Powell,* the court held that the suit was not moot because "Powell's claim for

This case is difficult to distinguish from *Bilbrey*, primarily because a declaratory judgment here might represent a significant step "along the road" to implementation of first amendment rights. Moreover, there can be no doubt that plaintiffs, like the students in *Bilbrey*, have an interest in vindication. While it is true that the decision of the Department was never "final" in that it never reached the ultimate stages of administrative review, *see supra* note 1, it is clear that plaintiffs have alleged sufficient reputational damage to bring into play the *Bilbrey* concern regarding constitutional vindication. Accordingly, plaintiffs' claim for declaratory relief is not moot and cannot be dismissed on this ground.[8]

B. *Immunity of the State and State Officials in their Official Capacity from a § 1983 Suit*

 The guarantee of sovereign immunity provided by the eleventh amendment precludes suit against a state in federal court absent consent. *Welch v. Texas Dept. of Highways and Public Transportation*, 483 U.S. 468, 107 S.Ct. 2941, 97 L.Ed.2d 389 (1987) (plurality opinion); *Quern v. Jordan*, 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979).[9] Moreover, the Supreme Court has explicitly held that a state is not a "person" who may be sued under § 1983, a proposition analytically distinct from eleventh amendment concerns. *Will v. Michigan Department of State Police*, 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). Therefore, plaintiffs' suit against the Department, an agency of the state, must be dismissed in its entirety without leave to amend.

 Likewise, because a suit for money damages against a state official in his or her official capacity is considered a suit against the official's office, the state official in his or her official capacity is also not considered a "person" for this purpose. *Id.* 109 S.Ct. at 2311. In this case, plaintiffs have named Superintendent Honig in his official capacity, Assistant Superintendent Barankin in his official capacity, and PPED Director Bird in her official capacity. Under *Welch* and *Will*, the § 1983 suit for money damages against these defendants must be dismissed, also without leave to amend.

 However, with respect to the claims for declaratory relief, neither *Welch* nor *Will* preclude such suits against state officials acting in their official capacities, *Chaloux v. Killeen*, 886 F.2d 247, 252 (9th Cir.1989), nor are such claims barred by immunity principles when they are brought against state officials in their individual capacities. Accordingly, the cause of action for declaratory relief against Honig and Barankin in their official and individual capacities, and against Bird in her official capacity, cannot be dismissed on immunity grounds.

C. *Qualified Immunity in a § 1983 Suit for Money Damages*

 With respect to the § 1983 claim for money damages against Honig and Barankin in their individual capacities, plain-

---

back salary remains viable even though he has been seated in the 91st Congress ..." Petitioner Powell sought declaratory relief from an allegedly unconstitutional House resolution denying him his back pay. *Id.* at 498, 89 S.Ct. at 1952. That House resolution was still operative when the Supreme Court heard the case, and thus the claim for declaratory relief was not moot. *Id.*

8. Alternatively, plaintiffs have urged this court to apply an exception to the mootness doctrine on the grounds that this case is "capable of repetition, yet evading review." *Southern Pacific Terminal Co. v. ICC*, 219 U.S. 498, 31 S.Ct. 279, 55 L.Ed. 310 (1911). Application of this exception would insulate the claims for injunctive and declaratory relief from the mootness

doctrine. However, the doctrine is only applicable where the duration of the challenged action is so short that it could not be fully litigated if repeated. Such is clearly not the case here, as plaintiffs would be capable of bringing another suit if the challenged conduct reoccurred.

9. The eleventh amendment also shields states from suits in federal court based on pendent state law claims. *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 106, 104 S.Ct. 900, 911, 79 L.Ed.2d 67 (1984). Therefore, to the extent plaintiffs are suing the defendants under state law for damages, this claim must also be dismissed under the eleventh amendment.

tiffs must avoid the preclusive effect of the qualified immunity doctrine. As the Supreme Court has held, "government officials performing discretionary functions are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982).

Here, plaintiffs' complaint does not allege conduct which clearly violated established statutory or constitutional rights of which a reasonable person would have known, as required under *Harlow*. Accordingly, the § 1983 claim for money damages against Honig and Barankin in their individual capacities is dismissed with thirty days leave to amend from the date of this order.

### D. *Standing*

Defendants allege that plaintiffs Dr. Cumming, S. Harris Rugg, and Woodside Christian Elementary School do not have standing. In order to have standing to sue, "plaintiff must show that he 'has sustained or is immediately in danger of sustaining some direct injury' as the result of the challenged official conduct, and the injury or threat of injury must be both 'real and immediate,' not 'conjectural' or 'hypothetical.' " *City of Los Angeles v. Lyons*, 461 U.S. 95, 101–02, 103 S.Ct. 1660, 1665, 75 L.Ed.2d 675 (1983) (citations omitted).

 Dr. Cumming is dean of the School, Rugg is a graduate student, and Woodside Christian is an affiliated elementary school which allegedly will lose "a unique source of instructors" because of defendants' actions. Applying *Lyons* to these facts, this court concludes that Dr. Cumming and Rugg do have standing, as the alleged deprivation of constitutional rights under color of state law may have directly damaged these two individuals in their ability to teach and learn free from religious interference. However, the status of the elementary school as a plaintiff, based entirely on an alleged future loss of "unique" instructors, is conjectural and speculative. Accordingly, this plaintiff lacks standing and is dismissed without leave to amend.

IT IS SO ORDERED.