Roselia GUERRA, Jorges Equihua, Moises Flores, Alicia Flores, Ralph Ortiz, Francisco Martinez and Rosalba Martinez, Plaintiffs-Appellants,

v.

Roy SUTTON, individually and in his official capacity as Chief Criminal Investigator for the Yakima, Washington office of INS; Roy C. Johnson, Paul A. Lowry, Robert J. Miller, Warren C. Goodwin, Joe A. Turner, individually and in their capacity as Border Patrol Agents; Steve Patterson, Tom DeWitt, James Robinson, and Dan Wells, individually and in their capacity as investigators for INS, Defendants-Appellees.

Roselia GUERRA, Jorges Equihua, Moises Flores, Alicia Flores, Ralph Ortiz, Francisco Martinez and Rosalba Martinez, Plaintiffs-Appellants,

v.

UNITED STATES IMMIGRATION AND NATURALIZATION SERVICE, Defendant-Appellee.

Roselia GUERRA, Jorges Equihua, Moises Flores, Alicia Flores, Ralph Ortiz, Francisco Martinez and Rosalba Martinez, Plaintiffs-Appellants,

v.

UNITED STATES IMMIGRATION AND NATURALIZATION SERVICE, Defendant-Appellee.

Nos. 84–4207, 84–4208 and 86–3536.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 7, 1986.

Decided Feb. 28, 1986.

Rebecca Smith, Granger, Wash., for plaintiffs-appellants.

William H. Beatty, Asst. U.S. Atty., Spokane, Wash., for defendants-appellees.

Before WRIGHT, CANBY and WIGGINS, Circuit Judges.

WIGGINS, Circuit Judge:

Seven appellants appeal the district court's dismissal of their *Bivens* and Federal Tort Claims Act, 28 U.S.C. §§ 2671–80 (FTCA), actions after a bench trial. Appellants claim that the trial court erred in holding that the federal employee defendants were immune from suit because of their reasonable reliance on the local police for warrants for searches in which the federal defendants may have participated. In addition, appellants argue that the trial court improperly failed to exercise its discretion respecting their claim for declaratory relief. Finally, appellants allege that the trial court erred in its apparent holding that the individuals' immunities precluded recovery under the FTCA. We affirm in part, reverse in part, and remand.

## FACTS AND PROCEDURAL HISTORY

Plaintiffs in this case are seven individuals of Hispanic ancestry who live in two different neighborhoods in Zillah, Washington. Defendants are the INS and ten INS investigators and Border Patrol Agents (collectively "INS defendants") stationed in the Yakima, Washington area. Seven of the ten defendants have more than twenty years experience with the INS and all had been trained in the law of search and seizure.

Zillah Police Chief George Bazin was concerned about the activity in the Leland Street neighborhood of Zillah, based on citizen complaints and personal observation. Bazin decided to act, but precisely what he intended to do is not clear. On August 23, 1982, Bazin sought assistance from the police of neighboring Granger, Washington, and from INS officers. He told the local INS supervisor, defendant Roy Sutton, that he believed illegal aliens were living in certain of the houses and requested the INS to "back up" the undermanned local police. Bazin assured Sutton that he would obtain an appropriate warrant. The INS had no open case files on any of the residents or residences at Leland Street and had never investigated them. Sutton agreed to help with the operation.

Sutton and defendant Robert Miller consulted their superior and were told that the INS agents could assist provided the local police had warrants. The superior also told them that in any event the INS agents were to stay on the perimeter and not to go inside the houses. These instructions were conveyed to the other INS defendants the same day.

Neither the INS nor local police tried to get any warrants, and none were in fact obtained. None of the INS defendants ever saw or asked to see a warrant.

Between 5:00 and 5:15 a.m. on August 24, with vehicle lights flashing, the local officers, the INS defendants, and an invited newspaper reporter approached and surrounded homes at 311, 313, and 315 Leland Street. The homes were entered and searched, one forcibly, although the parties

dispute the INS defendants' degree of involvement. A number of people were arrested, including between thirteen and fifteen by the INS defendants. In the process, a number of citizens and legal aliens were briefly detained and interrogated about their citizenship. The district court explicitly declined to make more specific findings of what happened, and plaintiffs' and defendants' versions differ sharply.

After the raid at Leland Street, at least 11 officers and agents, including INS defendants Goodwin, Miller, Robinson, Patterson, and Lowry, went to a four-unit apartment complex at 504 Second Avenue, some distance away. Officers or agents approached all four apartments and questioned the residents of the only one they found occupied. No arrests were made at Second Avenue. The agents and officers encountered no resistance or attempts at flight at either location. Again, the precise details of what happened are disputed and the district court made no more specific findings.

The plaintiffs filed suit asserting a 42 U.S.C. § 1983 claim against the Zillah and Granger police officers and a parallel *Bivens*-type claim against the ten INS defendants, seeking damages and declaratory relief. Plaintiffs later filed an FTCA claim against the United States based on the same events. The two actions were consolidated and set for jury trial. Just before trial, plaintiffs settled with the Zillah and Granger defendants, and the remaining parties stipulated to a bench trial on the claims against the INS defendants.

In its memorandum decision, the trial court had no difficulty finding that the rights of plaintiffs and perhaps others had been violated in the course of the operation, as there was no warrant or probable cause for one. The court found that evidence of specific actions by specific officers during the operations was far from clear, but stated: "Suffice it to say that the involvement of the [federal] government agents in conduct which might be deemed improper was minimal." There was no finding that any specific INS defendant engaged in any specific improper conduct.

The court found it unnecessary to make further findings as to the INS defendants' actions because it implicitly granted them qualified immunity. It found: "The supervisory personnel of the INS specifically inquired about warrants and were assured by the Chief of Police of Zillah that the necessary paperwork was being done and appropriate warrants would be obtained prior to any action." The district court found that the INS defendants relied on and had a right to rely on Chief Bazin's statement and would not have participated in the raid had they known no warrant had been obtained. As a result, the district court concluded, the responsibility for any rights violations lay with the local and not the federal authorities. The court made no mention in its memorandum decision of the FTCA claim or the request for declaratory relief.

On August 7, 1984, the district court entered final judgment referring only to the *Bivens* action. Apparently the court and all parties assumed that this judgment disposed of both the consolidated actions, and plaintiffs noticed appeal in both actions on September 6, 1984. On December 4, 1985, the district court issued an order of final judgment in the FTCA action (received by this court on December 9) and noted that the original judgment had omitted the FTCA action solely through clerical error. The court incorporated its earlier memorandum decision into the order and explained that the FTCA action was dismissed "[f]or the reasons set forth therein." Plaintiffs have also appealed the December order of judgment itself (appeal No. 86–3536 in this court). Because Nos. 84–4208 and 86–3536 are identical, we granted plaintiffs' unopposed motion to consolidate them after oral argument in 84–4208.

## JURISDICTION

These are direct appeals from final judgments in a United States district court and are properly before this court under 28

U.S.C. § 1291. The notices of appeal in 84–4207 (*Bivens* claim) and 86–3536 (second appeal of FTCA claim) were filed within 30 days of entry of their respective judgments and are therefore timely. Fed.R.App.P. 4(a)(1). The notice of appeal in 84–4208 (first appeal of FTCA claim) was filed before entry of final judgment but after announcement of the decision, and is therefore treated as timely filed after entry of judgment and on the same date (December 4, 1985). Fed.R.App.P. 4(a)(2). Although the last judgment was not filed until after the case was calendared and briefed in this court, both parties have treated it as properly on appeal. Because the district court order eliminated the jurisdictional defect, we may consider the merits of the appeal.[1]

## I.

### IMMUNITY OF THE FEDERAL DEFENDANTS

■ A federal officer is entitled to qualified immunity for actions taken in the course of duty unless the officer's conduct violated "clearly established" law. *Harlow v. Fitzgerald*, 457 U.S. 800, 818–19, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *Davis v. Scherer*, 468 U.S. 183, 104 S.Ct. 3012, 3018, 82 L.Ed.2d 139 (1984). The standard is the objective reasonableness of the officer's conduct. *Harlow*, 457 U.S. at 818, 102 S.Ct. at 2738. Thus, the INS defendants are entitled to immunity if they can prove that they acted under a *reason-*

*able* (even if mistaken) belief that what they were doing was lawful. *See Bilbrey by Bilbrey v. Brown*, 738 F.2d 1462, 1466–67 (9th Cir.1984), *citing Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 456 F.2d 1339, 1348 (2d Cir.1972), *enforcing* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

### A. Standard and Scope of Review

■ The trial court's determination of reasonable reliance is a finding of fact, *cf. Bilbrey*, 738 F.2d at 1467 (immunity as jury question), and is therefore reviewed under the clearly erroneous standard. This court therefore must accept the trial court's findings of fact unless it is left with the definite and firm conviction that a mistake has been committed. *Bohemia, Inc. v. Home Insurance Co.*, 725 F.2d 506, 508–09 (9th Cir.1984).

Because appellants do not dispute the district court's finding that the INS defendants *actually* relied on Bazin's procurement of an appropriate warrant, the only issue before us is whether that reliance was reasonable under the circumstances.[2]

### B. Merits

The district court found that the INS defendants reasonably relied on Bazin's assertion that he was in the process of getting proper warrants authorizing their conduct.[3] Plaintiffs argue that the law was clearly established that entry and search of a home requires a warrant, citing *Payton*

---

**1.** We note that the name of plaintiff Moises Flores was omitted from the case caption in the district court's December 4 corrective order. This omission is clearly a clerical error, and we do not regard it as jurisdictional. The body of the district court's order, along with its incorporation of the memorandum decision in C–82–1041, makes clear that the order disposed of all claims by all plaintiffs. The judgment was therefore final and the appeals in 84–4208 and 86–3536 are properly before this court. *Cf. Hoohuli v. Ariyoshi*, 741 F.2d 1169, 1171 n. 1 (9th Cir.1984) (holding that, where it appears a district court intended a dismissal to be final because it did not allow leave to amend, the case may be considered final and appealable).

**2.** Defendants' brief argues a number of other points, such as whether particular plaintiffs have standing to object to particular actions,

whether certain actions constitute a seizure, and whether certain actions were justified under the circumstances. All these arguments, however, go to the merits of the *Bivens* claims and involve issues of fact that the trial court explicitly declined to reach. The merits of the *Bivens* claims themselves therefore are not before us on this appeal, and we need not address defendants' arguments with regard to those merits.

**3.** The district court's finding here is imprecisely worded. Although the evidence supports the finding "that the Chief of Police did state to the federal agents that he *would have* all appropriate warrants and that he at no time told them that he was proceeding without warrants" (emphasis added), no evidence supports the district court's finding that Bazin represented to the agents that the warrants *had been obtained*. Although this distinction might be significant in

*v. New York,* 445 U.S. 573, 586, 100 S.Ct. 1371, 1380, 63 L.Ed.2d 639 (1980), and that the INS defendants should have done more to assure themselves of the existence of the warrant before participating in the operation.

■ Under circumstances like these, it was not necessary for all or even any of the INS defendants to actually *see* the warrant. Law enforcement officers and agencies are entitled to rely on one another to a certain extent. *See Baker v. McCollan,* 443 U.S. 137, 145–46, 99 S.Ct. 2689, 2695, 61 L.Ed.2d 433 (1979); *Whiteley v. Warden,* 401 U.S. 560, 568, 91 S.Ct. 1031, 1037, 28 L.Ed.2d 306 (1971); *cf. Arnsberg v. United States,* 757 F.2d 971, 981 (9th Cir. 1985) (IRS agents are entitled to rely on the judgment of assistant United States attorney that a warrant is legal). The system requires reasonable cooperation and division of labor, and the INS may reasonably rely on the statement of a responsible law enforcement officer (here the Chief of Police) to conclude that a proper warrant exists.

Nevertheless, we must reverse because the INS defendants behaved unreasonably under the circumstances. We hold that the INS defendants reasonably relied on the representation of a responsible person that a proper warrant would be obtained. The mere existence of a warrant, however, provided little useful information to the officers. They had a further duty to inquire as to the nature and scope of the warrant.[4] It is clear that such an inquiry was not made. The INS defendants had differing views of the type and scope of the local police warrant,[5] demonstrating that they were not given an advance briefing as to the source and extent of their authority to

enter, search, and arrest. We are not willing to extend qualified immunity to the conduct of INS agents acting under the assumed authority of a warrant where such agents have not made inquiry as to the nature and scope of that warrant. An INS agent who conducts a search or makes an arrest without knowledge of the details of the warrant under which he presumes to act violates clearly established law. The district court therefore clearly erred in concluding that the INS agents' reliance on the warrant made it unnecessary for the district court to determine exactly what the agents did.

In holding that no immunity exists by reason of reliance on the existence of a warrant, we are *not* deciding key facts that will require specific findings on retrial. Specifically, we do *not* determine whether an illegal arrest occurred when the homes were surrounded or when individual plaintiffs were interrogated. It is possible, as the comments of the district court suggest, that the acts of the INS defendants were not 4th Amendment violations at all and hence are not affected by the defendants' lack of immunity based on their belief in the existence of a warrant. Nevertheless, we cannot make such a conclusion absent specific factual findings, and because the district court found the INS agents immune because of their belief in the existence of a warrant, it did not make such findings.

We construe the district court's dismissal of the FTCA claim as based on the same qualified immunity grounds. Because we find that the individual defendants are not entitled to qualified immunity by reason of reliance on the existence of a warrant, we do not reach the issue of whether such

---

other circumstances, it does not logically preclude a finding that the defendants reasonably relied on Bazin in concluding that a warrant *existed.*

**4.** For example, the law was clearly established that warrants must particularly describe the things to be seized, *see, e.g.,* U.S. Const. amend. IV; *United States v. Drebin,* 557 F.2d 1316, 1322–23 (9th Cir.1977), *cert. denied,* 436 U.S. 904, 98 S.Ct. 2232, 56 L.Ed.2d 401 (1978), that the executing officers must confine their activi-

ties to the precise scope of the warrant, *see, e.g., Marron v. United States,* 275 U.S. 192, 196, 48 S.Ct. 74, 76, 72 L.Ed. 231 (1927), and that arrest warrants and search warrants are different and authorize different actions, *see, e.g., Steagald v. United States,* 451 U.S 204, 212–13, 101 S.Ct. 1642, 1647–48, 68 L.Ed.2d 38 (1981).

**5.** Defendants' own testimony at trial reveals between four and six different understandings of what kind of warrants the local police had obtained and who and/or what they were for.

immunity would also preclude recovery under the Federal Torts Claims Act, 28 U.S.C. §§ 2671–80 (1982). *See Arnsberg v. United States*, 757 F.2d 971, 980 n. 6 (9th Cir. 1985) (declining to reach the issue).[6]

Because the district court did not reach the merits of either the *Bivens* or the FTCA claim, we vacate the dismissal of these claims and remand to allow the district court to consider the merits of both claims and make appropriate findings.

## II.

## DECLARATORY JUDGMENT

### A. *Standard of Review*

■ "The customary deference for the district court is not applicable to its determination to grant a declaratory judgment. The court of appeals must exercise its own sound discretion to determine the propriety of the district court's grant or denial of declaratory relief." *United States v. Washington*, 759 F.2d 1353, 1356–57 (9th Cir.1985) (en banc) (citations omitted). Accordingly, we review denial of declaratory relief *de novo*.

### B. *Merits*

■ Plaintiffs claim that the district court failed to consider the merits of and exercise its discretion with respect to their request for declaratory relief. Plaintiffs seek judicial guidelines directed to the INS to control their future conduct in making arrests of illegal aliens. This is not the right case for such relief.

■ Declaratory relief is appropriate "(1) when the judgment will serve a useful purpose in·clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Bilbrey by Bilbrey v. Brown*, 738 F.2d 1462, 1470 (9th Cir.1984).

The circumstances of the present case do not meet these criteria. The only persons bound by any declaration would be the INS defendants themselves. Neither plaintiffs nor defendants represent a class and there is no indication that the plaintiffs will be subject to repeated future raids. The INS defendants here did not develop the basis or the plans for the raid, nor did they lead it. Any declaration limited to these facts would be so narrow as to be useless to the plaintiffs.

The INS defendants readily concede that the warrantless raid was improper. The legal relations between the parties are not uncertain or in need of clarification. The trial court properly declined to grant plaintiffs declaratory relief.

AFFIRMED IN PART, VACATED IN PART, and REMANDED.

Plaintiffs shall recover their costs on appeal. Plaintiffs' request for attorney's fees on appeal is denied.

---

**6.** At least one circuit court has found such preclusion. *See Norton v. United States*, 581 F.2d 390, 393–96 (4th Cir.), *cert. denied*, 439 U.S. 1003, 99 S.Ct. 613, 58 L.Ed.2d 678 (1978); *cf. also Gray v. Bell*, 712 F.2d 490, 507 (D.C.Cir. 1983) (finding "discretionary function" immunity applicable to FTCA intentional torts), *cert. denied*, 465 U.S. 1100, 104 S.Ct. 1593, 80 L.Ed.2d 125 (1984). *But see Arnsberg v. United States*, 549 F.Supp. 55, 57 (D.Ore.1982), *rev'd on other grounds*, 757 F.2d 971 (9th Cir.1985) (finding no preclusion); *Townsend v. Carmel*, 494 F.Supp. 30, 36–37 (D.D.C.1980) (same); *Crain v. Krehbiel*, 443 F.Supp. 202, 216–17 (N.D.Cal.1977) (same).