796 F.2d 1131
 55 USLW 2114, 14 Soc.Sec.Rep.Ser. 267,
Unempl.Ins.Rep. CCH 16,917
 James CHILICKY, Dora Adelerte, and Spencer Harris,
Plaintiffs-Appellants,
v.
Richard SCHWEIKER, former Secretary of Health and Human
Services; John Svahn, former Commissioner of the Social
Security Administration; and William R. Sims, Director of
the Arizona Disability Determination Service, in their
individual capacities, Defendants-Appellees.
 No. 84-2828.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Dec. 2, 1985.
Decided Aug. 12, 1986.
 
 William E. Morris, Southern Ariz. Legal Aid, Inc., Tucson, Ariz., for plaintiffs-appellants.
 Barbara L. Herwig, Howard S. Scher, Dept. of Justice, Civil Div./Appellate Staff, Washington, D.C., for defendants-appellees.
 Appeal from the United States District Court for the District of Arizona.
 Before BROWNING, SNEED, and HUG, Circuit Judges.
 HUG, Circuit Judge:
 
 
 1
 This case concerns the personal liability of certain state and federal officials and their immunity from damages arising from their alleged violations of citizens' constitutional rights. Appellants, whose Old Age, Survivors and Disability Insurance ("OASDI") and/or Supplemental Security Income ("SSI") disability benefits had been terminated during disability reviews in 1981, appeal the dismissal of their claims that appellees, the Secretary of Health and Human Services, the Commissioner of the Social Security Administration, and the Arizona state official who administered these disability benefits programs, unconstitutionally violated their rights under the Fifth Amendment in terminating appellants' benefits.
 
 
 2
 Appellants received disability benefits under Title II of the Social Security Act, 42 U.S.C. Sec. 401 et seq. (1982), or under the Supplemental Security Income program, 42 U.S.C. Sec. 1381 et seq. (1982). In 1980, Congress established, effective January 1, 1982, a continuing disability review ("CDR") process to insure that only those individuals whose medical conditions still warranted disability status received payment; however, the Secretary of Health and Human Services (the "Secretary" and "HHS," respectively) implemented the CDR process in March 1981. Appellants' disability benefits were terminated by the CDR process; however, they were ultimately reinstated, either through the administrative appeals process or under the provisions of the Social Security Disability Benefits Reform Act of 1984, Pub.L. No. 98-460, 98 Stat. 1794.
 
 
 3
 On August 20, 1982, appellants James Chilicky, Spencer Harris, and Doris Adelerte, together with seven other similarly situated persons, filed suit against Richard Schweiker, then HHS Secretary, John Svahn, Social Security Commissioner, and William R. Sims, Arizona Director of Disability Determinations.[1] The complaint asserted that the appellees ordered, sanctioned, or implemented numerous practices, in violation of federal law and the Fifth Amendment, in administering the CDR process, which culminated in the termination of appellants' benefits. The appellants alleged, inter alia, that the appellees: (1) improperly accelerated the starting date of the CDR process from the statutory effective date of January 1982 to the earlier date of March 1, 1981; (2) illegally nonacquiesced in the law of this circuit; (3) failed to apply any uniform written standards in implementing the CDR process; (4) failed to render decisions consistent with allegedly dispositive evidence; and (5) used an impermissible "quota system" under which state agencies were required to terminate a certain number of recipients.[2] On November 15, 1982, prior to submission of an answer, appellees filed a motion to dismiss under Fed.R.Civ.P. 12(b)(6), asserting, inter alia, a lack of both subject matter jurisdiction and personal jurisdiction for insufficiency of service of process.
 
 
 4
 On July 15, 1983, the district court stayed the proceedings pending disposition of Lopez v. Heckler. See Lopez v. Heckler, 725 F.2d 1489, 1493-96 (9th Cir.1984) (detailing procedural history), vacated and remanded, --- U.S. ----, 105 S.Ct. 583, 83 L.Ed.2d 694 (1984). The district court vacated the stay on April 6, 1984.
 
 
 5
 Because of the Lopez decision and actions taken by HHS prior to, and as a result of, the 1984 Disability Benefits Reform Act, appellants withdrew their requests for class certification and for declaratory and injunctive relief. Thus, the only claim remaining was their claim for money damages against appellees in their individual capacities for due process violations in implementing the CDR process. Appellants' surviving claim is predicated on the constitutional tort theory of Bivens v. Six Unknown Named Agents, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). On October 16, 1984, the district court dismissed the claim, ruling as a matter of law that all appellees were insulated from liability under the doctrine of qualified immunity. The district court found that the acceleration of the CDR process, the problems encountered at the state level, and the standards utilized in the review process, including the purported nonacquiescence policy of the Secretary in decisions of the Ninth Circuit, were not violations of clearly established statutory or constitutional rights of which a reasonable person should have known.
 
 DISCUSSION
 A. Jurisdiction
 1. Subject Matter
 
 6
 Appellees argue that the district court lacks subject matter jurisdiction of appellants' constitutional tort cause of action. Their argument is predicated on the assumption that appellants' action "arises under" the Social Security Disability Act; thus, appellees contend, section 405(h), 42 U.S.C. Sec. 405(h) (1982), precludes appellants' lawsuit. We disagree.
 
 
 7
 Section 405(g), 42 U.S.C. Sec. 405(g) (1982) provides that "[a]ny individual, after any final decision of the Secretary made after a hearing to which he was a party ... may obtain a review of such decision by a civil action ... brought in the district court of the United States ...." and that the "court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary ...."
 
 Section 405(h) states:
 
 8
 The findings and decision of the Secretary after a hearing shall be binding upon all individuals who were parties to such hearing. No findings of fact or decision of the Secretary shall be reviewed by any person, tribunal, or governmental agency except as herein provided. No action against the United States, the Secretary, or any officer or employee thereof shall be brought under section 1331 or 1346 of Title 28 to recover on any claim arising under [Title II of the Social Security Disability Act].
 
 
 9
 We agree with appellees that appellants' claim for money damages may not be raised under section 405(g); that section does not expressly grant the district court the power to award money damages to remedy the emotional distress caused by erroneous administrative decisions or processes. Rather, the only remedy available under section 405(g) is the retroactive payment of disability benefits that were wrongfully terminated. Appellants have already had their benefits retroactively restored by the Secretary; they now seek further compensation by instituting a lawsuit for money damages. Section 405(g) affords no such relief.
 
 
 10
 We disagree, however, with appellees' contention that section 405(h) prohibits any non-section 405(g) action against the appellees from being brought under the Fifth Amendment due process clause.[3] Section 405(h) only precludes actions "arising under" Title II of the Social Security Disability Act, a section 405(g)-type action for disability benefits, from being instituted prior to exhaustion of administrative remedies. Heckler v. Ringer, 466 U.S. 602, 104 S.Ct. 2013, 2021-22, 80 L.Ed.2d 622 (1984); Weinberger v. Salfi, 422 U.S. 749, 764-66, 95 S.Ct. 2457, 2466-67, 45 L.Ed.2d 522 (1975). Appellants do not pursue their remaining claim in an effort to have their disability benefits restored; this has been done. Rather, they seek damages for constitutional violations purportedly committed by appellees in terminating appellants' disability benefits. Consequently, this action does not arise under Title II of the Social Security Disability Act and is thus not barred by section 405(h). The district court has subject matter jurisdiction under 28 U.S.C. Sec. 1331 over appellants' due process claim against all appellees. Ellis v. Blum, 643 F.2d 68, 75-76 (2d Cir.1981). See also Kuehner v. Schweiker, 717 F.2d 813, 816-17, 819 (3d Cir.1983), vacated and remanded on other grounds, --- U.S. ----, 105 S.Ct. 376, 83 L.Ed.2d 312 (1984); Ostroff v. State of Florida Dept. of Health and Rehabilitation Services, 554 F.Supp. 347, 354 (M.D.Fla.1983) (federal defendants).
 
 2. Personal Jurisdiction
 
 11
 Although not expressly decided by the district court, Schweiker and Svahn contend that venue in the District Court of Arizona was improper and that the district court lacked personal jurisdiction over them because (1) the issuance of service of process was unauthorized and, thus, defective; and (2) there were not sufficient minimum contacts between the federal defendants and the State of Arizona necessary to satisfy the requirements of International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945), and the Arizona long-arm statute.[4] Appellants argue that the district court did have personal jurisdiction over Schweiker and Svahn in their individual capacities, but that even if service of process was insufficient, personal jurisdiction under the Arizona long-arm statute was lacking, and venue was improper, these appellees waived their objections under Fed.R.Civ.P. 12(g) and (h).
 
 
 12
 Fed.R.Civ.P. 12, and specifically subdivisions (g) and (h), promote the early and simultaneous presentation and determination of preliminary defenses. Rule 12(g) requires that a party who raises a defense by motion prior to an answer raise all such possible defenses in a single motion; omitted defenses cannot be raised in a second, pre-answer motion.[5] Rule 12(h) imposes a higher sanction with respect to the failure to raise the specific defenses of (1) lack of personal jurisdiction, (2) improper venue, (3) insufficiency of process, and (4) insufficiency of service of process.[6] If a party files a pre-answer motion, but does not raise one of the defenses enumerated above, the party waives the omitted defense and cannot subsequently raise it in his answer or otherwise. See Myers v. American Dental Association, 695 F.2d 716, 720-21 (3d Cir.1982), cert. denied, 462 U.S. 1106, 103 S.Ct. 2453, 77 L.Ed.2d 1333 (1983); Rauch v. Day & Night Manufacturing Corp., 576 F.2d 697, 701 (6th Cir.1978); 2A J. Lucas & J. Moore, Moore's Federal Practice p 12.23, at 2446-47 (2d ed. 1982).
 
 
 13
 [A]ny time defendant makes a pre-answer Rule 12 motion, he must include, on penalty of waiver, the defenses set forth in subdivisions (2) through (5) of Rule 12(b). If one or more of these defenses are omitted from the initial motion but were "then available" to the movant, they are permanently lost. Not only is defendant prevented from making it the subject of a second preliminary motion but he may not even assert the defense in his answer.
 
 
 14
 5 C. Wright & A. Miller, Federal Practice and Procedure Sec. 1391, at 852-53 (1969).
 
 
 15
 Appellees maintain that their first responsive pleading, Motion to Dismiss filed on August 20, 1982, preserved their objection to lack of jurisdiction over the person. We disagree. The only ground stated in the motion to dismiss was the lack of service of process, or a Rule 12(b)(5) defense. The specific defenses--lack of jurisdiction of the person under the Arizona long-arm statute, a Rule 12(b)(2) defense, and improper venue, a Rule 12(b)(3) defense--were not raised, and are thus waived. Appellees have abandoned their Rule 12(b)(5) defense, absence of service of process, and now claim that service of process against these appellees for money damages is not authorized by statute. This specific defense was not raised, however, in the motion to dismiss; this objection is also waived.
 
 
 16
 We do not accept the argument that by objecting to the lack of service of process, appellees are deemed to have raised a Rule 12(b)(2) defense. Rules 12(b)(4) and (5) were not designed to challenge personal jurisdiction allegedly obtained pursuant to a long-arm statute; rather, they were designed to challenge irregularities in the contents of the summons (Rule 12(b)(4)) and irregularities in the manner of delivery of the summons and complaint (Rule 12(b)(5)). Appellees' personal jurisdiction challenge was made pursuant to Rule 12(b)(5); they now contest personal jurisdiction under Rule 12(b)(2). Appellees were required, but failed, to consolidate all their Rule 12 defenses in their motion to dismiss. As such, they waived their Rule 12(b)(2) defense.B. Immunity of the Appellees[7]
 
 
 17
 The appellees argued, and the district court agreed, that they are entitled to qualified immunity on at least two of appellants' claims: acceleration of the CDR process and nonacquiescence in the law of this circuit. With qualified immunity, federal officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate "clearly established" statutory or constitutional rights of which a reasonable person would have known. Harlow v. Fitzgerald, 457 U.S. 800, 818-19, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); Guerra v. Sutton, 783 F.2d 1371, 1374 (9th Cir.1986). Under Harlow, the standard is the objective reasonableness of the federal official's conduct. Harlow, 457 U.S. at 818, 102 S.Ct. at 2738. "Even defendants who violate constitutional rights enjoy a qualified immunity that protects them from liability for damages 'unless it is further demonstrated that their conduct was unreasonable under the applicable standard.' " Capoeman v. Reed, 754 F.2d 1512, 1513 (9th Cir.1985) (quoting Davis v. Scherer, 468 U.S. 183, 104 S.Ct. 3012, 3018, 82 L.Ed.2d 139 (1984)). In this case, the federal defendants are entitled to immunity if they can prove "that they acted under a reasonable (even if mistaken) belief that what they were doing was lawful." Guerra, 783 F.2d at 1374 (emphasis in original) (citing Bilbrey v. Brown, 738 F.2d 1462, 1466-67 (9th Cir.1984)). The issue, as properly framed by the district court, is whether the law at the time of the appellees' alleged unlawful and unconstitutional activity clearly prohibited such conduct.[8] We review de novo the district court's order dismissing the appellants' Bivens claims on the ground that appellees as a matter of law are entitled to qualified immunity. Bilbrey v. Brown, 738 F.2d 1462, 1467 (9th Cir.1984).
 
 
 18
 The district court expressly found that (1) the acceleration of the CDR process, and (2) the nonacquiescence in the law of the Ninth Circuit were not violations of clear statutory or constitutional law so that a reasonable person would have acted otherwise, and granted to all appellees qualified immunity from appellants' claims.
 
 
 19
 The parties agree that Congress lawfully authorized the CDR process. Appellants object, however, to the Social Security Administration's acceleration of the CDR process, complaining that the states were ill-equipped to handle this increase in caseload. As the district court noted, Congress elected to delay implementation of the CDR process to allow the states time to employ and train personnel to handle the projected increase in disability review terminations. This staffing problem at the state level, however, extended beyond the congressionally-enacted effective date. Appellants' complaint, therefore, cannot be with the acceleration itself, but with the quality of the decisions rendered. Appellants' claimed erroneous disability terminations were redressable through the administrative review process; each appellant successfully utilized this mechanism. Neither the lawfully authorized CDR process, nor the acceleration of that program deprived appellants of any statutory or constitutional rights.
 
 
 20
 Appellants also challenge the actual review procedures adopted and utilized by the appellees, contending that these procedures differ from court-established standards.[9] 9] Specifically, appellants argue that the Secretary lacks authority to nonacquiesce in decisions of the courts. We do not need to address this issue, however, because under Harlow and Capoeman we are concerned only with the question of whether appellees' conduct, at the time it occurred, was clearly a violation of appellants' statutory and constitutional rights.
 
 
 21
 Harlow's "clearly established" standard requires that, in the absence of binding precedent, the court look to all available decisional law, including decisions of state courts, other circuit courts, and district courts to determine whether the law is clearly established. Capoeman, 754 F.2d at 1514; see also Ward v. County of San Diego, 783 F.2d 1385, 1387 (9th Cir.1986) (amended June 16, 1986). Absent binding precedent, the court should also evaluate the likelihood that the Supreme Court or this circuit would have reached the same result as courts that had already considered the issue. Capoeman, 754 F.2d at 1515; Ward, 783 F.2d at 1388.
 
 
 22
 Our examination of relevant statutory and decisional law at the time of the termination of benefits compels us to concur with the district court's evaluation: the law was not sufficiently clear in 1981 so as to expose to civil liability under Bivens those public officials, who in effect terminated disability benefits. At that time, there were no reported cases that held nonacquiescence by the Executive Branch in judicial decisions to be clearly unlawful. The officials charged with the responsibility of implementing and administering the CDR process were confronted with a congressionally mandated program designed to terminate benefits, a Presidential directive to implement that program some 10 months earlier than its effective date, and an administrative policy guideline instructing Social Security Administration officials to ignore certain case authority. In view of these factors, we find that appellees acted within the bounds of Harlow's reasonable person standard. The constant tension between the Executive and Judicial Branches over the appropriate standard for terminating disability benefits, together with the Secretary's nonacquiescence policy, rendered assessment of the legality of the CDR process by even a legal scholar extremely difficult. Most government officials are not charged with "the kind of legal scholarship normally associated with law professors and academicians. A reasonable person standard adheres at all times." Ward, slip op. at 1388.
 
 
 23
 The complaint alleges that some or all of the appellees violated the due process rights of the appellants in these other respects:
 
 
 24
 1. Knowing use of unpublished criteria and rules and standards contrary to the Social Security Act.
 
 
 25
 2. Intentional disregard of dispositive favorable evidence.
 
 
 26
 3. Purposeful selection of biased physicians and staff to review claims.
 
 
 27
 4. Imposition of quotas.
 
 
 28
 5. Failure to review impartially adverse decisions.
 
 
 29
 6. Arbitrary reversal of favorable decisions.
 
 
 30
 7. Denial of benefits based on the type of disabling impairment.
 
 
 31
 8. Unreasonable delays in receiving hearings after termination of benefits.
 
 
 32
 It cannot be determined as a matter of law that the appellants could prove no state of facts under these allegations that resulted in violations of their due process rights and consequent damages. Nor does the present state of the record establish as a matter of law that these appellees would be shielded from liability by qualified immunity.
 
 
 33
 Although we agree with the district court that qualified immunity precludes some of appellants' claims, the case must be remanded for further proceedings on those claims above mentioned.
 
 
 34
 The decision of the district court is AFFIRMED in part, REVERSED in part, and REMANDED for further proceedings.
 
 
 
 [1]
 Both Schweiker and Svahn have since resigned, and pursuant to Federal Rule of Civil Procedure 25(d), Margaret Heckler and Martha McSteen were substituted for the named appellees. The district court found that the substituted appellees were not personally served with a copy of either the complaint or the amended complaint and, therefore, dismissed Heckler and McSteen in their individual capacity from the lawsuit. Appellants do not contest this ruling on appeal. We note, however, that the district court correctly ruled that, without personal service in accordance with Fed.R.Civ.P. 4(d), the district court lacked jurisdiction to render a personal judgment against these appellees. See Hutchinson v. United States, 677 F.2d 1322, 1328 (9th Cir.1982)
 
 
 [2]
 The complaint sought: (1) certification of a class of disability benefit recipients whose benefits had been terminated through the CDR process; (2) a declaratory judgment that the CDR process, as then administered, violated federal law and the Fifth Amendment's due process clause; (3) preliminary and permanent injunctions enjoining the CDR process; (4) writs of mandamus directing the appellees to perform duties owed plaintiffs under federal law and the Fifth Amendment; (5) restoration of benefits; and (6) monetary awards for damages for "emotional distress and for loss of food, shelter and other necessities proximately caused by defendants' denial of benefits without due process ...."
 
 
 [3]
 Arguably, section 405(h)'s ban on actions "against the United States, the Secretary, or any officer or employer thereof" does not apply to suits against state officials, such as Sims. Because the state defendant Sims administers the federally-funded disability program, it can be argued that Sims was acting under color of federal law as an agent of the Secretary and, as such, is within the ambit of section 405(h). For jurisdictional purposes only, we conclude that Sims was acting under color of federal law. "To hold otherwise arguably would invite applicants for Title II benefits to circumvent sections 405(g) and (h) by bringing suit under section 1331 against the state officials instead of the Secretary ...." Ellis v. Blum, 643 F.2d 68, 76 (2d Cir.1981)
 
 
 [4]
 Arizona's long-arm statute, Ariz.R.Civ.P. 4(e)(2), provides:
 When the defendant is a resident of this state, or is a corporation doing business in this state, or is a person, partnership, corporation or unincorporated association subject to suit in a common name which has caused an event to occur in this state out of which the claim which is the subject of the complaint arose, service may be made as herein provided, and when so made shall be of the same effect as personal service within the state. In case of a corporation or partnership or unincorporated association, service under this Rule shall be made on one of the persons specified in Section 4(d)(6).
 
 
 [5]
 Fed.R.Civ.P. 12(g) provides that:
 A party who makes a motion under this rule may join with it any other motions herein provided for and then available to him. If a party makes a motion under this rule but omits therefrom any defense or objection then available to him which this rule permits to be raised by motion, he shall not thereafter make a motion based on the defense or objection so omitted, except a motion as provided in subdivision (h)(2) hereof on any of the grounds there stated.
 
 
 [6]
 Fed.R.Civ.P. 12(h) provides that:
 (1) A defense of lack of jurisdiction over the person, improper venue, insufficiency of process, or insufficiency of service of process is waived (A) if omitted from a motion in the circumstances described in subdivision (g), or (B) if it is neither made by motion under this rule nor included in a responsive pleading or an amendment thereof permitted by Rule 15(a) to be made as a matter of course.
 
 
 [7]
 All defendants were sued in their individual as well as official capacity. The district court ruled that the appellants' action against appellees in their individual capacities was defeated by the application of the doctrine of qualified immunity to these appellees. Although the district court did not directly address appellants' action against appellees in their official capacities, the doctrine of sovereign immunity must be found to have been implicitly applied by the district court. To the extent that appellees were sued in their official capacities, these claims are barred by the doctrine of sovereign immunity. See Gilbert v. DaGrossa, 756 F.2d 1455, 1458-59 (9th Cir.1985)
 
 
 [8]
 Neither the parties nor the district court address the merits of the appellants' Bivens claims. As the merits of the Bivens claims are not before us on appeal, we do not pass on the legitimacy of appellants' claimed constitutional deprivations
 
 
 [9]
 The Secretary issued formal notice of nonacquiescence in Finnegan v. Matthews, 641 F.2d 1340, 1345 (9th Cir.1981), and Patti v. Schweiker, 669 F.2d 582, 586-87 (9th Cir.1982), which hold that under the applicable statutes, the Secretary was required, before terminating a recipient's Social Security benefits, to come forward with evidence that a recipient's medical condition had improved. The Secretary advised all administrative law judges that the Social Security Administration's policy, that termination of benefits is called for if evidence shows the recipient is not disabled under current criteria, was to be followed in all Circuit Courts of Appeal, even the Ninth Circuit, without obeying the Ninth Circuit's requirement that proof of improvement in the claimant's medical condition must be made before termination of disability benefits. SSR 82-10c; SSR 82-1459c