*United States v. Hampton*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

*Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this court's Local Rule 32.1.1. When citing a summary order in a document filed with this court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.*

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 11ᵗʰ day of June, two thousand twenty six.

PRESENT:   GERARD E. LYNCH,
           STEVEN J. MENASHI,
           MARIA ARAÚJO KAHN,
                *Circuit Judges.*

_____

United States of America,

      *Appellee*,

    v.                                          No. 24-2805-cr

Danielle D. Hampton,

      *Defendant-Appellant.*

_____

*For Defendant-Appellant*:     LAWRENCE D. GERZOG, New York, NY.

*For Appellee*:     SEAN C. ELDRIDGE, Assistant United States Attorney, *for* Michael DiGiacomo, United States Attorney for the Western District of New York, Rochester, NY.

Appeal from a judgment of the United States District Court for the Western District of New York (Geraci, J.).

Upon due consideration, it is hereby **ORDERED**, **ADJUDGED**, and **DECREED** that the judgment of the district court is **AFFIRMED IN PART** and **REMANDED IN PART**.

Defendant-Appellant Danielle D. Hampton appeals from a criminal judgment entered on October 10, 2024. A trial jury returned a guilty verdict against Hampton on a single count of maintaining a drug-involved premises in violation of 21 U.S.C. § 856(a)(1). The district court sentenced her to a prison term of twenty-four months to be followed by three years of supervised release. *See* App'x 188. In this appeal, Hampton challenges the execution of a search warrant on her home, the sufficiency of the evidence supporting her conviction, and the failure of the district court to pronounce her conditions of supervised release. We assume the parties' familiarity with the facts, the procedural history, and the issues on appeal.

**I**

"On appeal from a district court's ruling on a motion to suppress evidence, 'we review legal conclusions de novo and findings of fact for clear error.'" *United States v. Ganias*, 824 F.3d 199, 208 (2d Cir. 2016) (quoting *United States v. Bershchansky*, 788 F.3d 102, 108 (2d Cir. 2015)). The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no

2

Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. As relevant here, the amendment requires "three things": (1) "warrants must be issued by neutral, disinterested magistrates," (2) "those seeking the warrant must demonstrate to the magistrate their probable cause to believe that 'the evidence sought will aid in a particular apprehension or conviction' for a particular offense," and (3) "'warrants must particularly describe the "things to be seized,"' as well as the place to be searched." *Dalia v. United States*, 441 U.S. 238, 255 (1979) (quoting *Warden v. Hayden*, 387 U.S. 294, 307 (1967), and *Stanford v. Texas*, 379 U.S. 476, 485 (1965)).

"[W]hen items outside the scope of a valid warrant are seized, the normal remedy is suppression and return of those items, not invalidation of the entire search." *United States v. Matias*, 836 F.2d 744, 747 (2d Cir. 1988). We have reserved blanket suppression of evidence for cases in which "[g]overnment agents 'flagrantly disregard' the terms of a warrant." *United States v. Shi Yan Liu*, 239 F.3d 138, 140 (2d Cir. 2000) (quoting *Matias*, 836 F.2d at 748). We have explained that "wholesale suppression is required only when (1) [the agents] effect a 'widespread seizure of items that were not within the scope of the warrant,' and (2) do not act in good faith." *Id.* (quoting *Matias*, 836 F.2d at 748).

### A

Before trial, Hampton moved to suppress phones and firearms seized from her home. *See United States v. Hampton (Hampton I)*, No. 22-CR-6196, 2024 WL 2188586, at *11 (W.D.N.Y. Jan. 2, 2024). Those items were seized when law enforcement entered the premises pursuant to a warrant. Hampton argued at the suppression hearing that the search of her home nevertheless violated the Fourth Amendment because the law enforcement officer who led the search—and the other officers who entered her home—did not read the warrant as it was issued by the judge. *See id.* The lead officer instead was involved in reviewing the application and proposing the warrant. *See id.* at *12.

A magistrate judge concluded that "evidence that the officers who executed a warrant conducted a search without first reading the warrant does not, without more, transform the search into an impermissible general search." *Id.* The officers in this case were unaware that the issuing judge crossed out portions of the proposed warrant, but that also in itself did not render the search impermissible. *See id.* at \*13. The magistrate judge determined that (1) the text of the warrant authorized the seizure of cellular phones and (2) the firearms were in "plain view," and she accordingly recommended a denial of Hampton's motion to suppress. *Id.* at \*13-14. The district court adopted that recommendation. *See United States v. Hampton (Hampton II)*, No. 22-CR-6196, 2024 WL 1526457, at \*5 (W.D.N.Y. Apr. 9, 2024).

**B**

Hampton presses similar arguments on appeal. She argues that "(1) because the search team was operating 'blind' in relation to the search warrant (since it had not been seen or discussed) and thus, in essence, functioning as if they were searching without a warrant and (2) because [one searching officer's] stated attitude toward the Fourth Amendment's requirements falls somewhere between disdainful at best and contemptuous at worst, the overall execution of the search evinces the 'flagrant disregard' that warrants suppression of the entire complement of items taken from Hampton's apartment on November 18, 2021." Appellant's Br. 18-19.[1] We disagree.

First, even if a searching officer's attitude was "disdainful" or "contemptuous," *but see supra* note 1, the attitude would not on its own qualify as

---

[1] The lead officer—Monroe County Sheriff's Office Sergeant Michael Anderson—did not review the warrant before entering the home. He acknowledged that was a "significant oversight." *Hampton I*, 2024 WL 2188586, at \*4. But he "testified that even if he had he been aware of the language that the issuing judge struck from the warrant, he would still have instructed members of the search team to seize cellular phones located inside the home." *Id.* at \*5.

4

a "flagrant disregard" of the warrant requirement under our case law. We have explained that an officer flagrantly disregards the terms of a warrant when he effects "a 'widespread seizure of items that were not within the scope of the warrant'" and does "not act in good faith." *Shi Yan Liu*, 239 F.3d at 140 (quoting *Matias,* 836 F.2d at 748). Even if Hampton could establish that an officer acted in bad faith, she still would need to show that law enforcement seized a large swath of items outside the scope of the warrant.

Hampton cannot make that showing. As the district court observed, the "language existing in the warrant authorized the seizure of cell phones because it authorized the seizure of electronic devices 'used for the purposes of video and/or audio surveillance' and 'any device to store media, video, pictures, and images from cameras.'" *Hampton II*, 2024 WL 1526457, at *4. In fact, the warrant specifically identified cellular telephone devices as items that could be seized. *See* App'x 34-35 ("Electronic devices used for the purposes of video and/or audio surveillance to include surveillance cameras, video cameras, and any device to store media, video, pictures, and images from the cameras, to include digital video recorders, computers, laptops, wireless access devices, *cellular telephone devices*, or any other electronic devices used to store multimedia images, as well as the content of any such devices.") (emphasis added).

The issuing judge crossed out parts of the warrant that would have authorized the police to *search* the "contents" of seized phones without an additional warrant. *See id.* at 33-34. But the *seizure* was authorized, so there was no widespread seizure of items outside the scope of the warrant.[2] The government

---

[2] The government represented at the suppression hearing that it did not search the contents of the seized phones, which the magistrate judge credited. *Hampton I*, 2024 WL 2188586, at *13; *see also* Gov't App'x 193 (the government's witness testifying at trial that he did not search the seized phones).

therefore did not flagrantly disregard the terms of the warrant, and suppression is unwarranted.[3]

Second, the mere failure to read a warrant before conducting a search—without more—does not render an otherwise reasonable search unreasonable. In *United States v. Armstrong*, the defendant argued that evidence should be suppressed because, "although a warrant for that apartment had been issued, the police officers, prior to conducting the search, did not have the warrant in hand, had not read the warrant, and had not had its terms read to them." 406 F. App'x 500, 501 (2d Cir. 2010). We held that the failure to read the warrant did not undermine the reasonableness of the search because the "supervising officer had knowledge that the narcotics division had obtained a search warrant for crack cocaine at Brown's apartment" and "the supervising officer informed the other officers of the warrant prior to the search." *Id.* We concluded that the district court "properly held that such objective information allowed the officers to conduct a reasonable search that fell within constitutional parameters." *Id.; see also United States v. Perrone*, 936 F.2d 1403, 1413 n.4 (2d Cir. 1991) (noting, in the course of upholding the denial of a suppression motion, that "the agents in fact did not read" the warrants), *decision clarified on reh'g on other grounds*, 949 F.2d 36 (2d Cir. 1991).

We agree with the district court and with the magistrate judge that this case resembles *Armstrong*. The district court recognized that the officers here, as in *Armstrong*, "had enough objective information to conduct a reasonable search within constitutional parameters" because the officer leading the search "reviewed the application and the proposed warrant before submitting it to Judge Randall."

---

[3] The seizure of the firearms was also within the scope of the warrant as "evidence that tends to demonstrate that a drug related offense was committed or that a particular person participated in the commission of such offense under the warrant." App'x 33; *see also id.* at 29 (the warrant application explaining that "[i]t is common for dealers to hide contraband, proceeds of drug sales[,] records of drug transactions, weapons, ammunition, caches of drugs," and other items).

*Hampton II*, 2024 WL 1526457, at *4. It did not render the search unreasonable that "he did not review it again after Judge Randall issued the warrant" because "he was informed by a team investigator that the warrant had been issued to search for cocaine at the Premises." *Id.* We agree that the search here did not violate the Fourth Amendment. *See Guerra v. Sutton*, 783 F.2d 1371, 1375 (9th Cir. 1986) (noting that an officer need not "actually *see* the warrant" because "[l]aw enforcement officers and agencies are entitled to rely on one another to a certain extent").

The Supreme Court has not "imposed a novel proofreading requirement on officers executing warrants" but has instead stressed that officers have only a "duty to ensure that the warrant conforms to constitutional requirements." *Groh v. Ramirez*, 540 U.S. 551, 563 n.6 (2004). "Normally, when an officer who has not been involved in the application stage receives a warrant, he will read it in order to determine the object of the search," but it is not categorically unreasonable for officers "who directed the search, [and] knew what items were listed in the affidavit presented to the judge," to "believe that the warrant authorized the seizure of those items." *Massachusetts v. Sheppard*, 468 U.S. 981, 989 n.6 (1984).

Under the circumstances here, the execution of the warrant was reasonable under the Fourth Amendment and the officers did not show a flagrant disregard for the warrant requirement. We conclude that the district court properly denied the motion to suppress.

**II**

"'We review de novo challenges to the sufficiency of the evidence,' viewing 'the evidence in the light most favorable to the government, drawing all inferences in the government's favor and deferring to the jury's assessments of the witnesses' credibility.'" *United States v. Zhong*, 26 F.4th 536, 559 (2d Cir. 2022) (quoting *United States v. Sabhnani*, 599 F.3d 215, 241 (2d Cir. 2010)). "A defendant, moreover, cannot prevail on a sufficiency-of-the-evidence challenge 'if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Id.* at 560 (quoting *United States v. Kozeny*, 667 F.3d 122, 139 (2d Cir. 2011)). "In

7

undertaking this review, we 'consider the government's case in its totality rather than in its parts,' mindful that the sufficiency-of-the-evidence test may be 'satisfied by circumstantial evidence alone.'" *Id.* at 559-60 (quoting *United States v. Hawkins*, 547 F.3d 66, 70-71 (2d Cir. 2008)).

Hampton was convicted of violating 21 U.S.C. § 856(a)(1). That means the government needed to prove that Hampton "knowingly" acted to "use, or maintain any place, whether permanently or temporarily, for the purpose of manufacturing, distributing, or using any controlled substance." 21 U.S.C. § 856(a)(1).

Hampton argues on appeal that the government proved only "that on four occasions in the latter part of 2021 *someone* sold cocaine to a confidential informant," but the government did not prove "the identity of" the sellers or "the purpose of maintaining the premises." Appellant's Br. 22-23. Hampton concedes that "[w]e do know that Hampton lived in the house with her child and her grandchild," but she argues that "[t]here was no witness who could provide even a single detail about what the purpose of maintaining the apartment was beyond that, much less provide evidence to assess the relative importance of any given purpose." *Id.* at 23.

To obtain a conviction under 21 U.S.C. § 856(a)(1), the government must prove that a defendant "(1) used a place; (2) for the purpose of distributing or packaging controlled substances; and (3) did so knowingly." *United States v. Facen*, 812 F.3d 280, 290 (2d Cir. 2016). The statute "is violated simply by *using* a place for the commission of the specified drug crimes; proof that the defendant 'maintained' the premises, which is a separate way of violating the statute, is not necessary for a conviction." *Id.* at 289 (alteration omitted).

A rational trier of fact could have found Hampton guilty beyond a reasonable doubt. At trial, evidence demonstrated that a black female wearing pajamas sold narcotics to an informant from the premises, suggesting that the seller resided there. *See* Gov't App'x 210-12. Hampton was the only adult resident

at the premises when law enforcement officers searched Hampton's home at approximately 6:00 am. *See id.* at 26, 71. She was also the accountholder for the utility services provided to the premises. *See id.* at 67.

Additional evidence discovered during the search connected Hampton and her apartment to the sale of narcotics. Law enforcement officers found fifty baggies of crack cocaine, a loaded and cocked handgun, cash, and drug-packaging paraphernalia on a table that Hampton called "my table." *Id.* at 312, 345; *see also id.* at 35, 85, 100, 111, 106, 123, 245. On that table, officers also found Hampton's driver's license, her cigarettes, her cellular phone, and her COVID mask. *See id.* at 85, 105-06, 197, 344. Officers found additional drug-packaging materials and a handgun holster in her bedroom. *See id.* at 128-31, 236, 337-38.

This evidence suffices to support the conviction. In *United States v. Long*, "the jury was instructed to determine whether the drug activity at 35 Chi Mar Drive was a 'significant or important reason' why the Defendant maintained the premises." 678 F. App'x 31, 36 (2d Cir. 2017). Our court upheld the judgment of conviction "[b]ased on the drug paraphernalia and firearms found at the Defendant's premises along with a small quantity of drugs." *Id.* That evidence supported the conclusion "that 35 Chi Mar Drive was being knowingly used to distribute controlled substances." *Id.* The evidence here is more compelling than the evidence in *Long*.

In *Facen*, we vacated a judgment of acquittal. *See* 812 F.3d at 283. We held that "[t]he evidence was plainly sufficient for a rational jury to find, beyond a reasonable doubt, that Facen used 303 Lakeview for the purpose of manufacturing, distributing, or using any controlled substance." *Id.* at 290. We reached that conclusion based on the same types of evidence: (1) "Facen was the only person present in the house when the officers arrived," (2) "[h]e was found in the largest bedroom on the second floor, unclothed on the bed," (3) "[h]e was lying on top of a roll of currency, and additional currency was found behind the headboard," (4) "[t]he currency found in and behind the bed totaled $1235," (5) "officers also

9

found, in a safe in the bedroom, Facen's birth certificate and two vehicle titles in Facen's name," (6) "[u]nderneath a stack of items on which the plates were resting, the officers found a manila envelope containing mail addressed to Facen at an address other than 303 Lakeview," and (7) Facen was in a relationship with the owner of the residence and "spent two nights per week at [the] house." *Id.* at 283-84. The evidence here is arguably stronger than in *Facen*, in which the defendant was not the primary owner of the home. Hampton is the primary owner here.

Hampton suggests that the government failed to prove that she used the residence "for the purpose of manufacturing, distributing or using a controlled substance" because it cannot show "that the drug activity was a significant or important reason why the defendant used or maintained the place" in light of the other reasons why Hampton maintained the residence. Appellant's Reply Br. 7 (alteration omitted); *see id.* ("Hampton's apartment was not only her residence but also the residence of her child and grandchild: where Hampton fed them, clothed them, and provided them with comfortable rooms in which to sleep, play, and do schoolwork, among other things.").

That is mistaken. As the jury instructions made clear, the government was "not required to prove that the drug activity is the defendant's only purpose at maintaining the place" but only a significant or important one. App'x 149. The quantity of drugs and contraband suggest that it was. In neither *Facen* nor *Long* was there any indication that the defendants used the residence for drug activities *alone*. Nor did we suggest that such proof was required. We conclude that sufficient evidence supported Hampton's conviction.

**III**

Both parties agree that we must remand in light of *United States v. Maiorana*, in which we held "that a sentencing court intending to impose non-mandatory conditions of supervised release, including the 'standard' conditions described in § 5D1.3(c), must notify the defendant during the sentencing proceeding" and "if the conditions are not pronounced, they may not later be added to the written

10

judgment." 153 F.4th 306, 314 (2d Cir. 2025). To comply with that requirement, a district court "must, at the very least, as part of the pronouncement of the sentence in the presence of the defendant during the sentencing proceeding, expressly adopt or specifically incorporate by reference particular conditions that have been set forth in writing and made available to the defendant in the PSR, the Guidelines, or a notice adopted by the court." *Id.*

In this case, the district court imposed thirteen standard conditions. *See* App'x 194. But "[t]he record of the sentencing proceeding is bereft of any oral pronouncement of these conditions, nor is there any language spoken at sentencing that incorporates these conditions by reference." Appellant's Br. 25 (citation omitted). The pre-sentence report does not identify the standard conditions. *See id.* The government does not dispute that *Maiorana* requires a remand. *See* Appellee's Br. 21. We explained in *Maiorana* that "[t]he appropriate remedy for the district court's error is a limited remand to address the thirteen conditions of supervised release that were not properly imposed, not a full resentencing." 153 F.4th at 315 n.13. On remand, the district court may either "convene a hearing in the presence of the defendant" and "advise the defendant that those conditions will be imposed" or "strike them from the judgment." *Id.* at 315.

\* \* \*

We have considered Hampton's remaining arguments, which we conclude are without merit. For the foregoing reasons, we affirm the judgment insofar as the district court denied the motion to suppress evidence and ordered a conviction and sentence supported by sufficient evidence. We remand for the district court to address the standard conditions of supervised release in accordance with *Maiorana*.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

11